Orlando **HECHAVARRIA** and Deloris **Hechavarria, Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. A. No. 3050.**

United States District Court, S. D. Georgia, Savannah Division.

April 2, 1974.

Joseph P. Farina, Miami Shores, Fla., for plaintiffs.

John F. Murray, Fred W. Schwendimann, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## ORDER

LAWRENCE, Chief Judge.

Orlando Hechavarria sues for refund of federal income taxes assessed for the years 1966–1969.[1] The action was transferred to this Court from the Southern District of Florida.[2] The case was tried before this Court on February 20, 1974.

Mr. Hechavarria was an electrician-seaman on a seagoing dredge. He claims that the taxes were illegally assessed because he was, during the period involved, a nonresident alien whose income was derived from sources outside the United States.[3] He contends in his claims for refund that for income tax purposes *"I am a nonresident alien"*.

The Government claims that plaintiff was an alien resident in this country and not a mere transient or sojourner. It argues that the various Immigrant Visas and Re-entry Permits he obtained

---

1. Mrs. Hechavarria is also a plaintiff, having signed joint returns. The taxes in dispute are:

    1966 $3498.40
    1967 $4209.84
    1968 Claim for refund in amount of $500 disallowed (assessed tax $5160.44).
    1969 Claim for refund of $1,000 denied.

2. At the time this suit was filed the Hechavarrias lived at Savannah.

3. "In the case of a nonresident alien individual, gross income includes only—gross income which is derived from sources within the United States. . . ." 26 U.S.C. § 872(a)(1).

consistently represented that he was a resident alien with permanent residence in the United States.

The evidence shows that Mr. Hechavarria was a citizen of Cuba when he entered the United States from Jamaica in 1961 on a Cuban passport. He came to Miami in order to obtain an Immigrant Visa which permitted him to establish permanent residence in this country. At the trial plaintiff gave as his reasons for coming to America his desire to flee Communism which he disliked, to provide for the safety of his family and to continue his employment with Standard Dredging Corporation, an American shipowner. Mrs. Hechavarria entered this country a little later.

From 1961–1969 Mr. Hechavarria spent a large part of his time working aboard dredges in foreign countries, including Australia and Vietnam. During that period he occasionally visited the United States. His ties and connections with this country were limited. In 1963 and again in 1964 he worked and lived aboard the dredge for six weeks while it was in the United States. In 1961 he obtained a Social Security card. He opened a personal checking account in Miami in 1967. Mr. Hechavarria did not integrate himself into American life. There was no business activity by him, no purchases of property, investments, membership in clubs or church organizations. His visits were to see his wife and son and his sisters and to obtain Re-entry Permits. During most of the period her husband was not in the country, Mrs. Hechavarria lived with her son in an apartment in Miami. In 1966–1969 she resided in Spain where her son attended college. Her husband visited them in that country in 1967 and 1969.

A summary of Mr. Hechavarria's activities during the period of 1961–1969 appears below.

| Year | Abode | How Long in U.S.A. | Reason for Visit |
|---|---|---|---|
| 1961 | Jamaica | 2 weeks | Visa |
| 1962 | Curacao | | |
| 1963 | Puerto Rico | 6 weeks | Fix Dredge |
| 1964 | Australia | 5 weeks | Fix Dredge |
| 1965 | Australia (Through Sept.) Vietnam (After Sept.) | 1½ weeks | Re-entry Permit and Visit to Family (Miami) |
| 1966 | Vietnam | | |
| 1967 | Vietnam | 1½ weeks | Re-entry Permit and Visit to Family (Miami) |
| 1968 | Vietnam | | |
| 1969 | Vietnam (Through July) | July-December | Re-entry Permit for Vietnam Visa |

Mr. Hechavarria paid federal income taxes until 1966. The assessments in controversy are those for 1966–1968. That period corresponds with the time he worked in Vietnam aboard a dredge.

At the trial the Government introduced considerable documentary evidence in the way of Immigrant Visas, Re-entry Permits and naturalization records. In applying for Re-entry Permits in 1964, 1965, 1967 and 1969, Mr. Hechavarria gave his address as Miami and represented himself, under oath, to be "an alien lawfully admitted to the Unit-

ed States for permanent residence". His application for an Immigrant Visa in 1967 (obtained from the American Embassy in Vietnam) said that his purpose in going back to the United States was "to re-establish my permanent residence". He stated that he was a "returning resident". In filling out an I. R.S. form in 1968 dealing with his alien status, plaintiff stated that when he left this country during the previous year he did not abandon his "United States residence" which he departed.

In 1970 plaintiff was naturalized as a citizen of this country. In applying for citizenship he had represented that he had been physically present in the United States for at least one year since he entered as an alien for permanent residence in 1961. Mr. Hechavarria testified at the trial that prior to the application for naturalization he was not aware that as an alien seaman on a vessel flying the American flag in foreign trade he could establish residence in this country for the necessary period.[4] The application for naturalization was supplemented by adding such constructive residence, under the McCarran Seamen's Act, as a basis for eligibility.

■ Mr. Hechavarria contends that the various re-entry permits and visas merely reflect an intent to become a United States citizen for *immigration* and not for *tax* purposes. Such representations, he says, may overcome any presumption of nonresident status but do not necessarily establish intent. Among the cases he relies on is Rudolf Jellinek et al. v. Commissioner, 36 T.C. 826, 836 (1961). The Tax Court held

that proof of declaration of intent to acquire residence in the United States merely indicates the type of proof that will be considered in determining whether the presumption of nonresidence has been overcome and does not "purport to mean that the filing of a declaration of intention alone would establish residence". The rule is that declaration of intent alone is insufficient to establish residence. *Jellinek,* at 833. Plaintiff argues that there must be an act or fact of dwelling and making one's home in the United States. See de la Begassiere v. Commissioner, 31 T.C. 1031, 1035 (1955).

Counsel cite a number of cases in support of their contentions.[5] Each case of this type is to be adjudged by its particular facts (*Jellinek,* at 834) and I do not think any useful purpose would be served by analogizing, analyzing and differentiating the decisions and their varying fact situations.

It has been said that an alien's failure to name a place outside the United States of which he was a resident misconceives the question at issue as well as the matter of burden of proof. See *de la Begassiere,* at 1035f.; *Philippe,* at 989. Agreeing that the residence of the alien during the tax years involved is the real issue, I still do not see why the unlikelihood of returning from abroad to any other place of abode than the United States is irrelevant. The Treasury Regulations state that "A mere floating intention . . . to return to another country is not sufficient to constitute him a transient". § 1871–2(b). For one to conceive that Mr. Hechavarria

4. "Any periods of time during all of which a person who was previously lawfully admitted for permanent residence has served . . . on board a vessel whose home port is in the United States . . . shall be deemed residence and physical presence within the United States . . . if such service occurred within five years immediately preceding the date such person shall file a petition for naturalization." 8 U.S.C. § 1441(a)(1).

5. See Jellinek v. Commissioner, 36 T.C. 826; Friedman v. Commissioner, 37 T.C. 539

(1961); Philippe v. Commissioner, 26 T.C. 984 (1956); de la Begassiere v. Commissioner, *supra;* aff'd. *per curiam,* 272 F.2d 709 (5th Cir.); William E. Adams and Hazel M. Adams v. Commissioner, 46 T.C. 352 (1966); Rose v. Commissioner, 16 T.C. 232 (1951). See Also Revenue Ruling 72–140 to the effect that Cuban exiles employed by the Navy at Guantanamo and who live or commute to the Naval Base are not resident aliens for income tax purposes by reason of their entering the United States merely to obtain or renew alien registration cards.

could or would ever go back to Cuba is to phantasize.

The only place steady work was afforded him was on American-owned dredges. His wife resided in the United States from 1961–1966. There is nothing to show that Mr. Hechavarria ever abandoned his announced intention as to permanent residence in this country. He gave her address as his. Their son lived here. Two sisters of Mr. Hechavarria lived in California and one in Miami. His wife was the gravitational influence in his roving existence. He always returned to where his family was.

It is urged that plaintiff was never more than a sojourner and never acquired a residence to begin with. See *Jellinek*, at 833. Mr. Hechavarria's representation to the contrary permitted his wife to establish a permanent residence in this country. Three years later in 1964 when his Cuban passport expired it was on the basis of his representation of an intent to be a permanent resident of the United States that permitted him to obtain a Re-entry. Permit without which he could not have continued his employment. Nonresident alienage may be rebutted by "acts and statements of the alien showing a definite intention to acquire residence in the United States. . . ." 26 C.F.R. § 1.871–4.

I do not subscribe to any idea that repeated sworn statements of permanent residence over a six year period are so many trifles and irrelevances that may be disavowed or wished away when it is to the alien's tax advantage to take a contrary position. That the Tax Court has at times discounted the weight of such evidence I realize. *Jellinek*, at 835; *Philippe*, at 991; *cf., Friedman*, 539f. I agree with the Board of Tax Appeals in L. E. L. Thomas, 33 B.T.A. 725, 736–737 (1935): "In order to avail himself of the provisions of the immigration laws and obtain an easy reentry into the United States the petitioner held himself out to the immigration authorities as one who

had been admitted to the United States for permanent residence and represented that in going abroad he was not abandoning the residence and domicile established here. . . . Having thus held himself out and satisfied the immigration officials that his absence was to be only temporary and thereby having obtained the benefits of his action, we think he is to be bound by it."

The Treasury Department Regulations provide that, for tax purposes, the fact that a sailor makes his home on a vessel flying the American flag and engaged in foreign trade does not establish residence in the United States. However, an alien seaman may acquire actual residence in this country although the nature of his calling requires him to be absent for a long time from the place where residence is established. § 1.-871–3. Under the Regulations, the presumption of alienage may be overcome by proof of filing a declaration of intention to become a citizen of the United States under the naturalization laws. § 1.871–4(c)(1)(i), (ii); (c)(2)(i), (ii).

Mr. Hechavarria testified that he never thought about being an American citizen until he filed for naturalization in 1969.[6] In his application he listed the places he had lived in this country in the previous five years. The Statement of Facts for Preparation of Petition recited his admission to the United States in 1961 for permanent residence and represented that he had resided continuously in this country since that year. The forms furnished the Immigration authorities at various times were under oath.

Citizenship of the United States is a privilege to be cherished and not applied for and accepted routinely. Representations made to obtain naturalization are not to be made or treated lightly. I am not impressed by the argument of plaintiff's counsel that the questions propounded on the various forms were in English only and were incomplete concerning the taxpayer's intentions "and/or

---

6. In an answer to an interrogatory plaintiff makes the somewhat puzzling statement that

"I never considered myself a resident of the U.S.A. until I applied for naturalization."

were inherently biased government forms".[7] Nor is this Court moved by the contention that plaintiff did not understand answers to the questions on some of the forms which were routinely prepared by others, and not read by him before signing.[8] True, this Court at times found communication at the trial simpler through an interpreter. However, I am satisfied that Mr. Hechavarria is knowledgeable when it comes to immigration matters.

As stated, intent as to residence is a subjective matter. It presents a mixed question of law and fact to be adjudged by the circumstances of each particular case. *Jellinek*, at 834; *Philippe*, at 989. Plaintiff contends that the Government has not shown that he made his home in the United States for any lengths of time sufficient to become a resident and that during his brief visits in this country he maintained only temporary living quarters. This Court finds that Mr. Hechavarria's asseverations of intent of permanent residence, when considered in the light of evidence of actual residence and his calling as a seaman, meet the test of alien residency in this country. His livelihood as an electrician aboard the sea-going dredge depended upon actual residency in the United States. Plaintiff wants the privileges without paying the price.

As an alien lawfully admitted to the United States for permanent residence, Hechavarria was eligible for citizenship by reason of five years "constructive residence" aboard a vessel flying the American flag. The Act in question provides that such service constitutes physical presence and residency in this country. 8 U.S.C. § 1441. I do not say that constructive residence can be retroactively applied to establish liability of a seaman for income taxes during his period of service on American vessels.

Section 1441 is not an internal revenue statute and the Treasury Regulations provide that taking out first citizenship papers is proof of residence from the time of filing same. 26 C.F.R. § 1.871–3; *Philippe*, at 992. The point is that where there is some evidence of actual residency and representations by the alien as to permanent residence, his reliance on constructive residence as a basis for naturalization may be considered along with all the other facts in the case in respect to the intent and fact of residence. It must be remembered that we are dealing with residence, not domicile; with an alien seaman, not a homebody. The Treasury Regulations (§ 1.-871–3) recognize that a seafarer's calling requires absence for long periods. His abode may be just a place to hang his hat during his stays in this country.

This Court finds and concludes:

■ 1. The internal revenue laws and immigration statutes both deal with alien seamen. Such legislation is complementary and not independent. The statutes and the Regulations recognize no distinction whereby aliens are to be considered as residents for immigrant permits, etc. and as nonresidents for income tax purposes.

■ 2. The presumption of nonresidence of an alien may be rebutted by acts and statements showing an intention to acquire residence or by proof of declaration of intent to become a citizen under the naturalization laws. The evidence in those respects overcomes in this case the presumption of nonresidence of Mr. Hechavarria. He was a resident alien, not a transient or sojourner.

■ 3. Acquisition of valuable privileges appertaining to resident alien status obtained on the strength of unequivocal representations to the immigration authorities of intent and fact of perma-

___

7. "For example: 'Have you abandoned your residency?' If Taxpayer answers 'yes', then it implies he was a resident in the past; if he answers 'no', then it is assumed his residency continues. Either of the supplied choices may not reflect the true facts." Plaintiff's Brief.

8. This has particular relevance to the claim for refund which was prepared by Mrs. Hechavarria's brother who is a certified public accountant. In it the statement appears that "My intention always has been to reside in U.S.A."

nent residence may be considered along with all the other circumstances of the alien's presence in the United States and his liability for income taxes.

■ 4. This Court has no jurisdiction over the Commissioner of Internal Revenue or the District Director of Internal Revenue Service for the State of Florida. See 26 U.S.C. § 7422(f)(1). The motion to dismiss the two individual defendants is granted.

■ 5. The plaintiffs have not paid the taxes assessed for the year 1968 (or 1969) and no suit for refund may be maintained in respect to those years until such time. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

The complaint is dismissed with prejudice. Counsel for the United States will submit an appropriate form of judgment.

The foregoing findings of fact and conclusions of law sufficiently comply with Rule 52(a).