ALBERT ERMOGENI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent ALBERT and MARJORIE ERMOGENI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ermogeni v. Commissioner
Docket Nos. 2319-74, 2320-74.
United States Tax Court
T.C. Memo 1976-202; 1976 Tax Ct. Memo LEXIS 199; 35 T.C.M. (CCH) 870; T.C.M. (RIA) 760202; June 23, 1976, Filed Leonard L. Stark, for the petitioners. Richard S. Kestenbaum, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION @QUEALY, Judge: Respondent determined a deficiency of $1,515.66 in the Federal income tax of petitioner Albert Ermogeni for the taxable year 1965 and a deficiency of $3,033.00 in the Federal income tax of petitioners Albert and Marjorie Ermogeni for the taxable year 1966. The only issue for decision is whether Albert Ermogeni was a nonresident alien during taxable years 1965 and 1966. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Albert Ermogeni, a citizen of France at all times material, filed Federal income tax returns for taxable years 1965 and 1966 with the Internal Revenue Service Center, Andover, Massachusetts. *201 His filing status was married, filing separately. The home address shown on the returns was Baldwin, New York. On December 6, 1969, petitioner Marjorie Ermogeni, Albert Ermogeni's wife, filed elections (Form 936) to treat the 1965 and 1966 returns as joint returns, pursuant to section 6013(b). [1] Marjorie Ermogeni was a citizen of the United States at all times material. At the time the petitions in this case were filed, petitioners resided at Cotonou, Dahomey, West Africa. On August 29, 1957, Albert Ermogeni (hereinafter referred to as "petitioner") filed an Application for Immigrant Visa and Alien Registration with the Immigration and Naturalization Service. In his sworn application, petitioner stated that he intended to live in the United States permanently. He was lawfully admitted to the United States for permanent residence on December 29, 1957. Petitioner was employed by Pan American World Airways, Inc., at the time of his entry into the United States., During each of the years 1958 to 1964, inclusive, he was employed within the United States; and *202 he filed a Federal income tax return each year as a resident alien. Petitioner was employed within the United States during the first part of 1965; but in April 1965, he was assigned by Pan American World Airways, Inc., to its facility at Abidjan, Ivory Coast, West Africa, for an indefinite period. It is stipulated that petitioner was a resident of the United States from December 29, 1957, to April 22, 1965. Petitioner departed from the United States on April 22, 1965. He obtained a work permit from the Ivory Coast, in the application for which he stated that he was a resident of that country. Petitioner was employed as an airport manager in the Ivory Coast from April 1965 until August 1965, when he was reassigned by Pan American World Airways, Inc., to its facility at Conakry, Republic of Guinea, West Africa, for an indefinite period. Petitioner reentered the United States on August 12, 1965. He departed from the United States on August 17, 1965. He obtained a work permit from the Republic of Guinea, in the application for which he stated that he was a resident of that country. Petitioner was employed in the Republic of Guinea from August 1965 until October 1966. He remained *203 in Guinea during the time of his employment, except for the period August 9 to August 12, 1966, during which time he returned to the United States. Petitioner reentered the United States on October 31, 1966. He remained in this country for the remainder of 1966. Pan American World Airways, Inc., did not withhold United States income taxes on the salary petitioner received while he was absent from the United States. Petitioner purchased a house in Baldwin, New York, prior to 1965. He and his family lived in the house prior to his departure in April 1965. Petitioner continued to own the house during 1965 and 1966. The house was rented to others during the time petitioner was absent from the United States. On May 15., 1969, petitioner filed an Application to File Petition for Naturalization with the Immigration and Naturalization Service. In his sworn application, petitioner stated that he had been lawfully admitted to the United States for permanent residence, that he had resided continuously in the United States since December 29, 1957, and that he intended to reside permanently in the United States. In the Federal income tax returns which petitioner filed for 1965 *204 and 1966, he reported only the income he made while working within the United States. Pan American World Airways, Inc., did not withhold United States income taxes on the income which petitioner received while he was absent from the United States. In his Federal income tax returns filed for 1965 and 1966, petitioner reported his income for the period during which he worked in the United States on Form 1040. He did not report his income for the period during which he was absent from the United States. OPINION Petitioner, a citizen of France, resided in the United States from December 1957 to April 1965 under a permanent resident visa which permitted him reentry to the United States. In April 1965, his employer transferred him to the Ivory Coast. In August 1965, he was reassigned to Guinea, where he was employed until October 1966. He maintained his permanent resident visa and returned to the United States several times during 1965 and 1966, using his permanent resident status to obtain reentry. Petitioner owned a house in Baldwin, New York, during 1965 and 1966. In 1969 petitioner filed an application for naturalization in which he stated that he had resided continuously *205 in the United States since December 29, 1957. Petitioner did not report income earned while he was physically absent from the United States on the basis that he was not a resident of the United States. Section 2(d) provides that nonresident aliens are not subject to the tax imposed on individuals, except under circumstances which are not applicable here. Section 872(a) imposes a tax on nonresident aliens only to the extent of gross income derived from sources within the United States or gross income effectively connected with the conduct of a trade or business in the United States. An alien who is a resident of the United States at the beginning of a taxable year but a nonresident at the end of the year is taxed under two different sets of rules, one for resident aliens during the period of residence and one for nonresident aliens during the period of nonresidence. Section 1.871-13(a)(1), Income Tax Regs. Respondent determined that petitioner is taxable on income earned while he was working outside the United States on the basis that petitioner was a resident of the United States and did not abandon his residence during 1965 or 1966. The term "nonresident alien" is not defined *206 in the Internal Revenue Code. Section 1.871-2, Income Tax Regs., defines a resident alien as one whose stay in the United States is not merely transient. He must be physically present at some time. The issue is one of fact, and its resolution depends on a determination of the individual's intent at the time. Petitioner relies on section 1.871-4(b), Income Tax Regs., which provides that an alien is presumed to be a nonresident by reason of his alienage. The petitioner is thus relieved of his burden of establishing initially that he is a nonresident. However, the regulations further provide: [2]
(c) Presumption rebutted-- * * *
(2) Other aliens. In the case of other aliens, the presumption as to the alien's nonresidence may be overcome by proof-- (i) That the alien has filed a declaration of his intention to become a citizen of the United States under the naturalization laws; or (ii) That the alien has filed Form 1078 or its equivalent; or (iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a *207 resident. Rebuttal of this presumption places the burden of going forward on the petitioner to offer proof of nonresidency. Douglas J. Lemery,54 T.C. 480, 486 (1970). It is undisputed that petitioner established his residence in the United States on December 29, 1957. At the time of his entry into the United States, petitioner intended to remain in this country permanently. He remained in the United States for a number of years. The presumption of nonresidence does not apply in such a case. See Robert M. Brittingham, 66 T.C. (June 3, 1976). Once an alien has acquired residence in the United States, he retains his status as a resident until he abandons it and departs from the United States. Section 1.871-5, Income Tax Regs. Petitioner contends that when he was assigned to the Ivory Coast in April 1965, he abandoned his residence in the United States. In support of his contention that he abandoned his residence, petitioner offered no contemporaneous proof other than his statement to officials of the Ivory Coast, and later Guinea, that he intended to reside in that country at the time of his assignment *208 to that country by Pan American World Airways, Inc. Such a declaration was required before petitioner could be employed in that country, and its significance is limited. Furthermore, the statement is not inconsistent with petitioner's United States residence, since a taxpayer may reside in more than one country for purposes of the definition of a resident alien under the tax laws. William N. Dillin,56 T.C. 228, 242 (1971); Josette J.F. Verrier Friedman,37 T.C. 539, 552 (1961). Petitioner's self-serving testimony is insufficient to establish his intention to abandon his residence in 1965 in the absence of other evidence. Petitioner's failure to include his income from employment abroad in his income tax returns for 1965 and 1966 may tend to imply that petitioner regarded himself as a nonresident at the time the returns were filed. However, the returns were not filed until 1967, after petitioner had returned to the United States. Moreover, petitioner's wife filed elections on December 6, 1969, to treat the 1965 and 1966 returns as joint returns. This action is inconsistent with petitioner's claim of nonresident status. See section 6013(a)(1). *209 Petitioner's statement at trial that he did not know his wife had filed such an election is not credible. The income tax returns do not constitute proof that petitioner intended to abandon his residence in the United States in April 1965. On the other hand, there is substantial evidence to support respondent's contention that petitioner did not abandon his United States residence in 1965. Petitioner had obtained entry into the United States by stating, in a sworn application, that he intended to remain in the United States permanently. As a result, he obtained an Alien Registration Receipt Card, which is regarded by the Immigration and Naturalization Service as evidence of lawful permanent residence in the United States. See 8 C.F.R. secs. 211.1(b) and 264.1(b)(1976). With this card, petitioner effected reentry into the United States on August 12, 1965, on August 9, 1966, and on October 31, 1966. Such use of his permanent resident status is inconsistent with petitioner's claim of nonresidence. See Walter J. Baer,6 T.C. 1195 (1946); L.E.L. Thomas,33 B.T.A. 725 (1935). Petitioner owned a residence *210 in Baldwin, New York, during 1965 and 1966. Petitioner and his family lived in the house prior to his departure for the Ivory Coast. While petitioner and his family were out of the United States, the house was rented to others. Petitioner contends that the rental of the house to others and the fact that when petitioner returned briefly to the United States in 1965 and 1966 he did not stay in the house show that petitioner did not keep the house for his own residence. The limited duration of petitioner's stay in the United States made it impractical for him to reoccupy the house. He had rented the house to a third party. Having rented the house, he could hardly have stayed in it during his three- to five- day return trips to the United States. Indeed, continuing to own the house which he had occupied as a permanent resident, and renting the house out to others while he was gone, is indicative of petitioner's intention ultimately to return to the United States. In his application for naturalization filed in 1969, petitioner stated that he had resided continuously in the United States since December 29, 1957. Although such a statement was made four years after petitioner's *211 departure from the United States, it is inconsistent with petitioner's statement at trial that he abandoned his residence in 1965. Furthermore, the fact that petitioner applied for naturalization in 1969 is consistent with respondent's position that petitioner intended to reside permanently in the United States from the moment he entered the country, as he stated in his 1957 application for a visa, and that he never abandoned such intention. Although petitioner's status for immigration and naturalization purposes is not dispositive of his resident status for income tax purposes (see Rudolf Jellinek,36 T.C. 826 (1961)), the internal revenue laws and the immigration statutes are complementary and not independent. Hechavarria v. United States,374 F.Supp. 128, 133 (S.D. Ga. 1974). Petitioner's sworn statements and his use of his resident status were consistent for the years 1958 to 1969, inclusive. He established and maintained his status as a resident throughout those years for both immigration and naturalization purposes. Furthermore, he owned a house in the United States which he used as his residence prior to his departure in 1965 and which *212 he continued to own during the years in dispute. It is unreasonable to believe, as petitioner would have us do, that he came to the United States in 1957 intending to reside here permanently, abandoned that intention in 1965 although retaining his residence for immigration and naturalization purposes, and then changed his intention once again upon his return to the United States, actually filing for naturalization in 1969. The mere fact of petitioner's absence from the United States does not destroy his already established status as a resident. Josette J.F. Verrier Friedman,supra.We conclude that petitioner was a resident alien in taxable years 1965 and 1966. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Sec. 1.871-4(c)(2), Income Tax Regs.↩