KAZUKO S. MARSH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2046–73.   Filed April 25, 1977.

*Wesley C. Marsh* and *Robert Reineke,* for the petitioner.
*Stephen M. Friedberg,* for the respondent.

STERRETT, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes for the calendar years 1966 through 1969 as follows:

| Year | Deficiency | Year | Deficiency |
|------|-----------:|------|-----------:|
| 1966 | $505.87 | 1968 | $1,177.23 |
| 1967 | 540.54 | 1969 | 980.26 |

Due to concessions made by petitioner, the sole issue remaining for decision is whether petitioner was a resident or a nonresident alien of the United States, for Federal income tax purposes under sections 871–874,[1] during the taxable years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner Kazuko S. Marsh (hereinafter Kazuko) resided in Abingdon, Va., at the time she filed her petition herein. Petitioner filed an individual separate U.S. income tax return for the period January 1 through October 28, 1966, with the District Director of Internal Revenue, New Orleans, La., and separate nonresident alien U.S. income tax returns for the period October 29 through December 31, 1966, and for taxable years 1967 through and including 1969, with the Director, Office of International Operations, Washington, D. C.

Petitioner, a citizen of Japan by virtue of her birth, married Wesley C. Marsh (hereinafter Wesley) on August 9, 1962, in Tokyo, Japan. Prior to the time of his marriage and until December 11, 1970, Wesley served continuously on active duty as a regular career attorney/officer of the United States Air Force.

Accompanying her husband to his new duty station at Barksdale Air Force Base, La.,[2] Kazuko first entered the United States on September 20, 1962, declaring her intentions to remain here permanently. Petitioner and her husband occupied federally owned and controlled living quarters on Barksdale Air Force Base until February 15, 1963, when Wesley purchased a home in Bossier Parish, La. During 1963 Wesley, an American citizen, elected to become a citizen of the State of Louisiana.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

[2] The record does not indicate where Wesley was previously stationed.

On or about March 15, 1965, Wesley was transferred to Malmstrom Air Force Base, Mont., where he and Kazuko again occupied federally owned and controlled living quarters, located on a portion of the military reservation over which the United States exercised exclusive jurisdiction, until September 1966 when Wesley was reassigned to duty in the Republic of Vietnam.

Petitioner was prohibited from accompanying her husband to his new duty station in Vietnam and was required to vacate the living quarters which she and Wesley had occupied on Malmstrom Air Force Base. Kazuko, believing it best to return to and live with her mother, went to Japan on October 29, 1966. At the time his wife left the United States, Wesley did not know that Kazuko was eligible for, or even that there existed, a permit whereby Kazuko could reenter the United States as a nonquota immigrant at any time within 1 year of its issuance.

On November 1, 1967, Wesley departed Vietnam, joining Kazuko in Japan, on reassignment to Tachikawa Air Base, Japan. In April of 1968 Wesley and Kazuko desired to vacation in Hawaii. Petitioner secured a Japanese passport[3] and, in order to gain entry into the United States, applied for and was granted a nonimmigrant visa, to wit, a B-2 visa authorizing entry into the United States for a temporary period for business or pleasure. Petitioner and her husband arrived in Honolulu, Hawaii, on May 3, 1968, and returned to Japan, arriving on May 25, 1968.

Late in 1969, or early in 1970, Wesley decided to retire from the Air Force. After determining that employment opportunities in Japan and Hong Kong were of no interest, he elected to return to the United States. Kazuko and Wesley arrived in the United States on December 5, 1970, and Wesley retired from active military service on December 11, 1970. Petitioner reentered this country under an SB-1 immigrant visa which provided that she had been lawfully admitted to the United States for permanent residence on September 20, 1962, and was returning from a temporary visit abroad.

---

[3] For the years in issue a Japanese passport ceases to be valid if the bearer fails to leave Japan within 6 months from the date of its issue. Additionally, it expires upon the bearer's return to Japan.

Petitioner and Wesley did not return to Bossier Parish, La., because they had previously leased their home. Instead they visited Wesley's mother in Staunton, Va., and then established residence, in March of 1971, in Virginia.

OPINION

The parties are in agreement that the sole issue is whether Kazuko was a resident or nonresident alien of the United States for Federal income tax purposes under sections 871–874.[4] It is undisputed that petitioner established her residence, as a resident alien, in the United States in 1962. Therefore, the presumption of section 1.871–4(b), Income Tax Regs., that provides an alien, by reason of her alienage, a supposition of nonresidency, is rebutted.[5] Once an alien has acquired residence in the United States, she retains such status until she abandons it and departs from the United States. Sec. 1.871–5, Income Tax Regs. "[I]ntention carries great weight in determining whether a residence *once established* has been abandoned." *Adams v. Commissioner,* 46

---

[4] If petitioner was a nonresident alien during said years, one-half of Wesley's income from sources without the United States, attributable to petitioner under the community property laws of the State of Louisiana, would be excluded from income. As a resident alien, however, petitioner would be taxed on income in the United States, wherever earned. *Baer v. Commissioner,* 6 T.C. 1195, 1198 (1946).

[5] Sec. 1.871–4 Proof of residence of aliens.

(a) *Rules of evidence.* The following rules of evidence shall govern in determining whether or not an alien within the United States has acquired residence therein for purposes of the income tax.

(b) *Nonresidence presumed.* An alien, by reason of his alienage, is presumed to be a nonresident alien.

(c) *Presumption rebutted*—(1) *Departing alien.* In the case of an alien who presents himself for determination of tax liability before departure from the United States, the presumption as to the alien's nonresidence may be overcome by proof—
* * *

(iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident.

(2) *Other aliens.* In the case of other aliens, the presumption as to the alien's nonresidence may be overcome by proof—
* * *

(iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident.

Both parties agree that the Treasury regulations under sec. 871 are applicable. In previous cases we have approved such regulations as a practical implementation of the law. *Friedman v. Commissioner,* 37 T.C. 539, 551 (1961).

T.C. 352, 361 (1966); *Dillin v. Commissioner,* 56 T.C. 228, 242 (1971). Furthermore, an individual may have more than one residence, *Jellinek v. Commissioner,* 36 T.C. 826 (1961), and absence from the United States for a long period of time does not itself destroy an alien's status as a resident of the United States for Federal income tax purposes. *Friedman v. Commissioner,* 37 T.C. 539, 552 (1961). Thus, "we are concerned [here], not with whether the taxpayer has established a foreign residence, but, rather, with whether [s]he has ceased to be a U.S. resident." *Dillin v. Commissioner, supra* at 242. The issue is factual, and considering the facts and circumstances herein, we conclude that petitioner was a resident alien of the United States for the years in issue.

Initially we note that Wesley testified at trial on behalf of his wife because of her difficulty in comprehending and speaking English as well as her difficulty in remembering past events. Moreover, petitioner testified that, when she left the United States in 1966, she planned to come back to the United States with her husband if he came home. In view of the foregoing we believe petitioner's residency status was, to a great extent, controlled by her husband. She clearly did not form an intent in 1966 to abandon her United States residence because she desired to live with her husband and Wesley had not determined, at that time, that they would not return to the United States after his tour of duty in Vietnam. Wesley testified that the matter of Kazuko's resident versus nonresident status never entered his mind during the time he was in Vietnam. Additionally he stated at trial that, while in Vietnam, he recognized he was excused from filing his tax return and that he did not file for his wife[6] because, as a resident alien filing a joint return, she also was excused from filing.[7]

Petitioner's contention on brief that she did not obtain a reentry permit to reenter the United States as a nonquota immigrant, prior to departing the United States in 1966, is of no support when Wesley testified that he, and therefore petitioner, was unaware of the permit's existence. In short, we

---

[6] For the years in issue Wesley prepared his wife's tax returns.

[7] See sec. 7508.

are unable to find from the record any intention by petitioner to abandon her resident alien status in 1966.

Petitioner on brief divides the overall period of time outside the United States into three lesser periods, to wit:

(1) October 28, 1966, to October 29, 1967, the initial period of petitioner's absence from the United States, following her departure without obtaining a reentry permit or taking any other steps to protect her right to reenter the country.

(2) October 29, 1967, to April 26, 1968, the period commencing with the date on which petitioner lost her reentry rights into the United States.

(3) April 26, 1968, to December 5, 1970, the period commencing with the issuance to petitioner of the nonimmigrant visa under which she entered the United States at Honolulu on May 3, 1968.

With respect to these three periods respondent argues on brief that only petitioner's intention upon her departure from the United States in 1966 is in issue. While it is possible that petitioner could depart from the United States in 1966 and abandon her United States residence in a later year, we are convinced, as noted under the facts of the instant case, that petitioner never formulated that requisite intent. Indicative of Wesley's and Kazuko's intention not to abandon their United States residence is the leasing of their home in Bossier Parish, La., while they were out of the country. *Dillin v. Commissioner, supra* at 242.[8] Also, although we have found an inconsistency in the United States Immigration Service's 1968 classification of petitioner by granting her a nonimmigrant, B–2, tourist visa status for purposes of visiting Hawaii, and by granting her, in 1970, an SB–1 immigrant visa, stating she had been previously lawfully admitted to the United States in 1962 and was returning from a temporary visit abroad,[9] we have often stated "that the immigration status of an alien does not conclusively determine whether she is a resident of

---

[8] See also *Ermogeni v. Commissioner,* T.C. Memo. 1976–202.

[9] Although Wesley testified that this aforenoted statement was not subscribed to by Kazuko, but was added by the Immigration Service after Kazuko had filed her application for such immigrant visa, we find, in light of the certified copy of the immigrant visa and alien registration form placed in the record and without corroboration of petitioner's contention, such testimony to be self-serving and inconclusive.

the United States" for tax purposes.[10] See *Brittingham v. Commissioner,* 66 T.C. 373, 414 (1976).

To repeat, the mere fact of petitioner's lengthy absence by itself from the United States does not destroy her already established status as a resident. We are of the opinion, based upon the evidence submitted and consistent with the fact that petitioner intended to accompany her husband whenever possible, that petitioner never abandoned her resident alien status for the years in issue. It seems clear that, when the time for filing past tax returns came, Wesley followed the time-honored tradition of resolving all doubts in his favor and claiming, effective retroactively, that his wife had changed her alien status from resident to nonresident. The objective facts require us to reject his claim.

*Decision will be entered for the respondent.*

---

[10] Petitioner on brief argues that her stay in the United States is limited to a definite period by the immigration laws and therefore, classified in 1968 as a nonresident by the Immigration Service, her tax residency is controlled by her immigration status. Sec. 1.871–2(b), Income Tax Regs. However, in 1962 when Kazuko was granted permanent residence status in the United States, her stay was not limited to a definite period and therefore the immigration laws are not controlling. Petitioner has the burden to prove she effectively abandoned such residency status.