CARMEN R. ESCOBAR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2777–75. Filed May 31, 1977.

*Joseph H. Guttentag, Stephen A. Nauheim,* and *Alan M. Schwartz,* for the petitioner.

*Robert K. Dowd,* for the respondent.

OPINION

WILES, *Judge:* Respondent determined a $451.41 deficiency in petitioner's 1971 income tax. The sole issue is whether petitioner and members of her family were resident aliens during 1971.[1] If they were, petitioner and her husband may file a joint return and claim dependency exemptions for their children and petitioner's mother.

All of the facts were stipulated and are found accordingly. The facts necessary for the resolution of the issue are specifically included in this opinion.

Petitioner lived in Bethesda, Md., when she filed her original individual return for 1971, when she and her husband jointly filed an amended return for that year, and when she filed her petition in this case.

Petitioner and her husband, Carlos, are citizens of Chile. They have lived in the Washington, D.C., area with their three children and petitioner's mother since 1966, when Carlos Escobar secured a position with the Inter-American Development Bank (hereinafter IDB). When they moved to Washington, the Escobars brought their household goods and personal effects with them. They purchased a home in 1966 in Maryland. After using international drivers' licenses for a brief period following their arrival in the United States, the Escobars obtained Maryland drivers' licenses.

Carlos Escobar has a permanent career position with IDB as a technical assistance officer. He intends to remain at IDB as a career employee through normal retirement age at 65. When he took the position, he had no intention of returning to Chile. Under IDB personnel policies, Carlos Escobar was a probationary employee for 1 year. After that period, he became a career (confirmed) employee entitled to certain rights. He may be discharged for misconduct, unsatisfactory service, or as a result of a reduction in staff. Discharge for other than misconduct requires substantial advance notice. IDB must attempt to find another position in its organization for an employee if there is a reduction in staff, or in lieu

---

[1] Although Carmen Escobar is alone before this Court, it is necessary for the proper disposition of this case that we determine the residency status of all members of the Escobar family. See secs. 6013 and 152(b)(3), I.R.C. 1954, set out in n. 2.

thereof, grant up to 6 months' termination pay and reimburse employees for moving and travel expenses.

Carlos Escobar, as an employee of an international organization, his wife (petitioner), their children, and petitioner's mother hold G–4 visas. Employees of international organizations and their families holding G–4 visas are admitted to the United States for the duration of the employee's status as an employee. They may remain as long as the Secretary of State continues to recognize them as employees or members of an employee's family.

Upon termination of employment with an international organization, the employee holder of a G–4 visa and members of his family holding such visas will have their visas canceled and would have to leave the country unless they obtain alternative visa status. If their original status is lost, they are permitted to apply for change of status under the immigration laws. It is United States policy to give them a reasonable time to apply for change of status and to remain in the United States until such status is approved or disapproved. It is not the policy of IDB to assist employees holding G–4 visas to adjust or otherwise change their visa status.

Since leaving Chile in 1966, the Escobars have maintained no residence in Chile. They do not consider themselves as residing anywhere except in the United States. The Escobars have considered themselves as nonresidents of Chile and have been treated as such for Chilean income tax purposes.

Petitioner was 46 years old at the time of trial and has been employed since 1967 as a second grade teacher in Washington, D.C. She intends to continue such employment.

Since 1966 the Escobars have maintained all of their bank accounts in the Washington, D.C., area, except for one small account kept in Chile with a balance of less than $1. They own three cars, all registered in Maryland. Since entering the United States, the Escobars have not traveled outside the United States, except for annual vacations. The Escobars attend church in Potomac, Md., where their son participates in the choir. They have been members of various cultural and social organizations in the Washington, D.C., area and have been members and volunteers of a local charitable organization. They have also been regular members of the Merrimack Park Recreation Association, a swimming club in Bethesda,

Md., for over 7 years. The Escobars own no property, either real or personal, outside of the United States, except for the bank account mentioned above.

Respondent argues that petitioner and members of her family are nonresident aliens. If respondent is correct, petitioner may not file a joint return with her husband or claim dependency exemptions for her children or her mother.[2] Petitioner, of course, argues that she and members of her family are resident aliens.

The resolution of this issue depends upon the proper interpretation of section 1.871–2(b), Income Tax Regs., which provides as follows:

(b) *Residence defined.* An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. *An alien whose stay in the United States is limited to a*

---

[2] Statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(a) JOINT RETURNS.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:

(1) no joint return shall be made if either the husband or wife at any time during the taxable year is a nonresident alien;

SEC. 152. DEPENDENT DEFINED.

(b) RULES RELATING TO GENERAL DEFINITION.—For purposes of this section—
    * * *

(3) The term "dependent" does not include any individual who is not a citizen of the United States unless such individual is a resident of the United States, of a country contiguous to the United States, of the Canal Zone, or of the Republic of Panama. The preceding sentence shall not exclude from the definition of "dependent" any child of the taxpayer—
        * * *

(B) legally adopted by him, if, for the taxable year of the taxpayer, the child has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, and if the taxpayer is a citizen of the United States.

*definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.* [Emphasis added.]

Respondent relies upon Rev. Rul. 71–565, 1971–2 C.B. 266, which states that the stay in the United States of holders of G–4 visas, such as petitioner and members of her family, is limited by the immigration laws to a definite period. Accordingly, pursuant to section 1.871–2(b), Income Tax Regs., the holders of such visas are not residents of the United States.

Even if we assume that the stay in the United States of holders of G–4 visas is limited by the immigration laws to a definite period,[3] petitioner and members of her family may still be resident aliens. In *Brittingham v. Commissioner,* 66 T.C. 373 (1976), one of the taxpayers argued that she was a nonresident during the years in issue since her stay was limited to a definite period by the immigration laws. She relied upon the last sentence in section 1.871–2(b) which is the center of the present dispute. We stated the following at page 414:

Moreover, even if Roberta [the taxpayer] had established that her presence each year was limited by the immigration laws, we are nonetheless convinced that she was a resident of the United States during each of the years in issue. We have held on several occasions that aliens whose stay in the United States was limited by the immigration laws were nevertheless residents of the United States. See, e.g., *Marsman v. Commissioner, supra; Ceska Cooper, supra; Joe May,* 39 B.T.A. 946 (1939); *J.P. Schumacher,* [32 B.T.A. 1242 (1935)]. While the facts of each of these cases may be distinguishable, such cases clearly establish that the immigration status of an alien does not conclusively determine whether she is a resident of the United States. *J. P. Schumacher,* 32 B.T.A. at 1247. Roberta lived in an apartment in the United States for over 20 years on an apparently permanent basis. No evidence was presented to show why she chose to reside in the United States for such an extended period. Although she was unable to testify at trial, her sons, who did testify extensively, provided no evidence on this issue. Based on these facts, it is apparent that "exceptional

---

[3] The immigration law which allegedly limits the stay of holders of G–4 visas to a definite period is sec. 214 of the Immigration and Nationality Act, 8 U.S.C. sec. 1184(a). Actually that section and the attendant regulation, 8 C.F.R. sec. 214.2(g), allow holders of G–4 visas and members of their families to remain in this country for the duration of the employee's status as an employee. Rev. Rul. 71–565, 1971–2 C.B. 266, holds, in effect, that the phrase "definite period" appearing in sec. 1.871–2(b) means the same as "duration of the employee's status as an employee." We merely assume that this is so, for the purposes of this opinion, without deciding the issue.

circumstances" exist in this case. While Roberta's stay may have been nominally limited by the immigration laws, the fact remains that she was able to continuously reside in the United States for over 20 years.

*Schumacher* involved the years 1927–30, inclusive. In *Schumacher* the regulation in question read as follows:

> An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this article [section].

The Board at page 1247 stated that it did not think this sentence of the regulation was decisive since "Irrebuttable presumptions are not favored." Since *Schumacher,* the sentence in question has been amended to read as follows:

> An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, *in the absence of exceptional circumstances.* [Emphasis added.]

With this amendment, there is certainly no longer an irrebuttable presumption. And given the facts of this case, it is fortunate there is no longer an irrebuttable presumption. Petitioner was in this country for approximately 5 years (with the intention of staying) before the taxable year in issue started. Her husband's job was secure, and he intended to hold it until his retirement at 65. The Escobars had their children and petitioner's mother with them. They had a home, cars, and Maryland drivers' licenses. With the exception of a small bank account, all of their worldly goods were in the United States. They involved themselves in the community by becoming members of various social and cultural organizations. There is really no question that petitioner and members of her family pass the applicable tests of residency.[4] We

---

[4] In addition to the applicable tests contained in sec. 1.871–2(b), Income Tax Regs., see the test contained in sec. 1.871–4, Income Tax Regs., set out below:

Sec. 1.871–4. Proof of residence of aliens.

(a) *Rules of evidence.* The following rules of evidence shall govern in determining whether or not an alien within the United States has acquired residence therein for purposes of the income tax.

(b) *Nonresidence presumed.* An alien, by reason of his alienage, is presumed to be a nonresident alien.

(c) *Presumption rebutted—* * * *

* * *

(2) *Other aliens.* In the case of other aliens, the presumption as to the alien's nonresidence may be overcome by proof—

* * *

emphasize that the question of residency is factual. *Adams v. Commissioner*, 46 T.C. 352, 358 (1966). Different facts may require a different result.

Since petitioner and members of her family were residents of the United States during the year in question, she may file a joint return with her husband, and they together may take dependency exemptions for their children and petitioner's mother.

*Decision will be entered for the petitioner.*

(iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident.

See also *Marsh v. Commissioner,* 68 T.C. 68 (1977).