VICTOR BIGIO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bigio v. Commissioner
Docket No. 2211-89
United States Tax Court
T.C. Memo 1991-319; 1991 Tax Ct. Memo LEXIS 351; 62 T.C.M. (CCH) 119; T.C.M. (RIA) 91319; July 10, 1991, Filed *351 Decision will be entered for the respondent. Alan L. Weisberg and Dennis G. Kainen, for the petitioner. Sergio Garcia-Pages and Gary F. Walker, for the respondent. SWIFT, Judge
SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income tax liability and additions to tax as follows: Additions to Tax, Secs. [1]
Year
Deficiency 6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
1981
$ 5,166,461
$ 1,291,615
$ 258,323
$ 2,927,821
$ 395,877
1982
961,773
240,443
48,089
376,715
93,636
1983 1,946,137
486,534
97,307
565,117
119,090
1984
667,829
166,957
33,391
136,337
41,986
The primary issue to be decided is whether petitioner was a resident of the United States during the years in issue. FINDINGS OF FACT Some *352 of the facts have been stipulated and are so found. Petitioner was born in England in 1920. Petitioner moved with his parents to New York in 1925 and became a naturalized U.S. citizen. In 1930, petitioner moved with his parents to Colombia, South America, where he remained with his parents through his childhood. In 1965, petitioner officially renounced his U.S. citizenship. From 1965 through the time of trial, petitioner traveled on a British passport. Prior to the years in issue, petitioner married in Colombia and three children were born in Colombia to petitioner and his wife. Petitioner and his wife raised their children in Colombia. The family frequently vacationed in Florida. Petitioner speaks English fluently, although he usually converses in Spanish with his family. From 1977 to 1986, petitioner did not own a house in his name in Colombia. During those same years, a house that petitioner's wife owned in Bogota, Colombia, was leased to tenants. The house was sold in 1986. During 1981 through 1984, petitioner maintained a substantial presence in and contacts with the United States. When in the United States, petitioner and his wife lived in a large, fully furnished *353 condominium petitioner owned and maintained at 5500 Collins Avenue, Miami Beach, Florida. This condominium was purchased by petitioner in 1973 for $ 250,000. When petitioner and his wife were traveling out of the United States, this Collins Avenue condominium was not rented nor occupied by other individuals. It was maintained full time for petitioner's use. [2]
In addition to the Collins Avenue condominium, petitioner purchased for approximately $ 170,000 a condominium *354 at 2333 Brickell Avenue, Miami, Florida. Petitioner's son, Alan Bigio, used this condominium. Petitioner also purchased a townhouse located at 20225 Northeast 34th Court Miami, Florida, which townhouse was used by petitioner's daughter, Doris, and her husband. At some point before 1981, petitioner had purchased and sold a condominium in Hallandale, Florida. At least two of petitioner's three children were living in the Miami area throughout the years in issue, and petitioner frequently spent time with his children and grandchildren. Petitioner visited and socialized frequently with his two sisters and with other Colombian friends who also were living in the Miami area. At least two of petitioner's children attended and graduated from colleges in the United States, both before and during the years in issue. Throughout the years in issue, petitioner maintained for his and his wife's use two automobiles at the Collins Avenue condominium. One of the automobiles was a white 1979 Cadillac that, for convenience, was titled in the name of petitioner's son, Alan Bigio. Throughout the years in issue, petitioner regularly consulted several medical doctors in the Miami area relating *355 to a series of continuing personal health problems. Petitioner carried medical health insurance through a U.S. company that apparently had a policy of not issuing health insurance policies to nonresident aliens. During the years in issue, through Financiera Asociada S.A. (Asociada), a Panamanian corporation wholly owned by petitioner, petitioner invested in, among other things, U.S. Government securities and U.S. based securities and commodities. These investments, which totaled several million dollars, were apparently made through stockbrokers in the Miami area, with whom petitioner frequently met. Petitioner maintained a personal computer equipped with a modem at the Collins Avenue condominium that petitioner used for communicating with and retrieving investment related information from various computer data bases and services such as Compu Trac. Each Sunday a copy of "Commodity Perspective" was delivered in petitioner's name by special delivery to the Collins Avenue condominium. Petitioner relied on this publication to give him up-to-date investment information. The record does not indicate that petitioner maintained any bank accounts in Colombia. Petitioner and his various *356 wholly owned corporations, however, maintained several bank accounts in the United States and in Switzerland. Regular bank statements with respect to at least some of the Swiss bank accounts were mailed to petitioner at the Collins Avenue condominium. During 1981, 1982, and until October 13, 1983, petitioner's British passport identified petitioner's residence as "U.S.A." On October 13, 1983, petitioner's British passport was changed to identify his residence as the "United Kingdom." At all relevant times, petitioner's British passport identified his occupation as "retired." During the years in issue petitioner and his wife traveled extensively all over the world. When petitioner entered the United States, petitioner generally was granted a 6-month visa. Petitioner never stayed in the United States beyond the period specified in the visas without taking another trip overseas. Petitioner's most frequent and regular trips were between Miami, Florida, on the one hand, and London, Puerto Rico, and Barranquilla, Colombia, on the other. The records of the U.S. Immigration and Naturalization Service and of various airlines that are in evidence indicate that petitioner entered and *357 left the United States during the years in issue at least as follows. In each instance, petitioner departed the United States from Miami, Florida, and entered the United States in Miami, Florida. Where known, the other destination and departure cities are indicated. 1981
January 5
Entered United States
September 14
Departed United States to London
October 30
Entered United States
1982
January 18
Departed United States
March 27
Entered United States
May 3
Departed United States to Barranquilla
May 8
Entered United States
May 10
Departed United States to London
June 27
Entered United States
July 12
Departed United States
July 17
Entered United States
September 28
Departed United States
October 10
Entered United States
October 12
Departed United States
October 18
Entered United States
October 29
Departed United States to London
November 8
Entered United States
December 8
Departed United States to Barranquilla
1983
April
Departed United States to London
May
Entered United States
June 8
Entered United States
July 8
Entered United States
November 11
Entered United States
December 12
Departed United States to San Juan
1984
January 3
Entered United States
January 26
Entered United States from Barranquilla
February 26
Departed United States to Barranquilla
March 1
Entered United States from Barranquilla
March 28
Entered United States from Barranquilla
August 12
Departed United States to Barranquilla
August 16
Entered United States from Barranquilla
September 9
Departed United States to Barranquilla
September 13
Entered United States from Barranquilla
October 14
Departed United States to Barranquilla
October 18
Entered United States from Barranquilla
November 3
Entered United States
November 25
Departed United States to Barranquilla
November 28
Entered United States from Barranquilla
December 19
Departed United States to San Juan
*358 Analysis of information in evidence concerning charges made with petitioner's credit card during 1981 through 1984 indicates that petitioner was in the Miami area for significant periods of time during the years in issue. For example, during 1983, many purchases were made in the Miami area in petitioner's name in each of the months of January, February, April, July, August, September, November, and December. Beginning in 1947 through the present time, petitioner has been affiliated with the textile industry in Colombia. In 1977, while working with a textile company named Vanytex, and while involved in a labor dispute at Vanytex's plant in Bogota, Colombia, petitioner suffered five gunshot wounds. Petitioner sought medical attention in Florida. After recuperating from the gunshot wounds in Florida, petitioner curtailed his work for Vanytex and was somewhat reluctant to return to Bogota. During 1981 through 1984, however, petitioner maintained strong business ties to Colombia, and petitioner frequently traveled to Colombia, usually staying for a few days each trip. Petitioner held an ownership interest in one-third of Fabrica De Hilazas Vanylon S.A. (Vanylon), a Colombian corporation *359 that operated a large textile manufacturing plant in Barranquilla, Colombia. Petitioner held his ownership interest in Vanylon through a Colombian corporation called Financiera Canal S.A. (Canal), that was wholly owned by petitioner. Petitioner was not paid a salary by Vanylon. During each year in issue, Canal received dividends from Vanylon. Petitioner's work for Vanylon included frequent trips throughout the world to identify and research new fabrics. Petitioner was instrumental in establishing at Vanylon computerized systems and controls for its financial analysis. On his various trips into Colombia, petitioner used a tourist visa to gain admission into Colombia. Petitioner was not a resident of Colombia at any time during the years in issue. When in Barranquilla, petitioner stayed at a house owned by his brother. All utility bills for the house where petitioner stayed in Barranquilla were allegedly paid by Vanylon. During the years in issue, it was not uncommon for wealthy individuals in Colombia to be kidnapped and held for large ransoms. After the incident in 1977 in which petitioner was shot, petitioner feared assassination and kidnapping, and petitioner thereafter *360 often traveled in an armored car when in Colombia. Title to the car was in the name of the Vanylon plant manager. For the years in issue, neither petitioner, Asociada, nor Alderside Corp. filed tax returns in the United States, in the United Kingdom, in Colombia, nor in any other country. Canal filed tax returns in Colombia for each year in issue. OPINION In general, individuals who are resident aliens of the United States are taxed the same as U.S. citizens. Individuals, however, who are nonresident aliens are taxed only on income derived from sources within the United States. Secs. 871 and 872; secs. 1.1-1(b) and 1.871-1(a), Income Tax Regs. A determination of residence is a fact question that is based on the facts and circumstances of each case. Park v. Commissioner, 79 T.C. 252, 286 (1982), affd. without opinion 755 F.2d 181 (D.C. Cir. 1985); Jellinek v. Commissioner, 36 T.C. 826, 834 (1961). The nature and degree of permanence of an individual's presence in and contacts with a country with respect to which the individual is an alien determines, for Federal income tax purposes, whether or not the individual is a *361 resident thereof. Jellinek v. Commissioner, supra at 834. Some permanence of living within a country is necessary to establish residence in a country. Park v. Commissioner, supra at 287; De la Begassiere v. Commissioner, 31 T.C. 1031, 1036 (1959), affd. per curiam 272 F.2d 709 (5th Cir. 1959). One may be a resident of more than one country ( Marsh v. Commissioner, 68 T.C. 68 (1977), affd. without opinion 588 F.2d 1350 (4th Cir. 1978)), and neither termination nor abandonment of a residence in another country is considered a prerequisite to a finding of a residence in the United States. Marsh v. Commissioner, supra at 72; Dillin v. Commissioner, 56 T.C. 228, 242 (1971); Adams v. Commissioner, 46 T.C. 352, 358 (1966). Treasury regulations define residence in the context of section 871 as follows: An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by *362 his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. [Sec. 1.871-2(b), Income Tax Regs.]
For Federal income tax purposes, an alien is presumed to be a nonresident alien. Sec. 1.871-4(b), Income Tax Regs. This presumption of nonresidency, however, does not place the *363 burden of persuasion on respondent. Park v. Commissioner, supra at 288 n.13; Adams v. Commissioner, supra at 361 n.8. Petitioner contends that he was a resident of Colombia during the years in issue. He claims that every trip he made into the United States was for definite purposes (namely, vacations, family visits, medical appointments, and product development for Vanylon) that could be and that were accomplished within a limited period of time. Referring to the last sentence of the above-quoted regulation and because the duration of each of his trips into the United States was limited by the visas issued to him, petitioner contends that he should not be considered a resident of the United States. Petitioner contends further that there were no exceptional circumstances that would justify a finding that he was a resident of the United States. Respondent contends that petitioner maintained a strong degree of permanent attachment to the United States and that petitioner was not in the United States as a mere transient or sojourner. Respondent argues further that petitioner did not spend a significant amount of time in Colombia, *364 that petitioner was not a resident of Colombia during the years in issue, and that these circumstances overcome the presumption of nonresidence to which petitioner as an alien is entitled. In Park v. Commissioner, supra, we addressed a factual setting similar to the instant case and found that the taxpayer was a U.S. resident despite extensive business and family ties to Korea. We said: It is true that petitioner came to the United States on visas that technically limited his stays, and he was frequently absent from the United States. Because of the international character of some of his business activities, however, he did not stay continuously in any country. We think the duration and nature of his presence in this country, as evidenced by his deep and continuing involvement in business, personal, social, and political affairs, were sufficient to establish the kind of attachment and relationship to this country that constitutes residency within the meaning of the regulations under section 871. * * * [79 T.C. at 289.]
In the instant case, petitioner did not engage in extensive political activities in the United States. Petitioner, *365 however, purchased a number of condominiums in the Miami area, one of which petitioner lived in and occupied with his wife and occasionally with other family members on a regular basis during the years in issue. Petitioner made many business investments in the United States relating to U.S. based securities and commodities. Petitioner frequently socialized with his family and with other Colombian immigrants in Miami. A large percentage of petitioner's immediate family, including all of his children and grandchildren, lived in the Miami area. As was the situation in Park v. Commissioner, supra, because petitioner traveled extensively outside the United States, the visa restrictions on petitioner's stays in the United States are not a meaningful indication of petitioner's residency. See Schoneberger v. Commissioner, 74 T.C. 1016, 1027 (1980). Petitioner argues that his situation is analogous to that of the taxpayer in Adams v. Commissioner, supra. In Adams, the taxpayers were Canadian citizens who maintained a family home and extensive business and investments in Canada. For several years, the wife and children *366 lived most of each year in Florida so that the children could attend school in Florida. The husband continued living and working in Canada most of each year, visiting his family in Florida an average of 70 days each year. The taxpayers filed tax returns in Canada for all 3 years in issue, and they filed Federal income tax returns in the United States as nonresident aliens for 2 of the 3 years in issue. On those facts, among others, the husband in Adams was found to be a nonresident alien, and the wife was found to be a resident alien. Adams v. Commissioner, supra, is distinguishable from the instant case because, among other things, the taxpayer-husband in Adams continued living most of each year in the family home in Canada where he owned several businesses, and he spent only an average of 70 days each year in the United States. In the instant case, the evidence suggests that petitioner spent more time each year in the United States than he spent in other countries, and petitioner did not maintain an abode in Colombia or in any other country. Furthermore, the time petitioner spent outside the United States was divided among several countries. *367 It appears that the Collins Avenue condominium was petitioner's home base and residence from which petitioner departed and to which petitioner returned on his numerous trips overseas. Although not without doubt, based on the facts and circumstances before us in this case, we conclude that petitioner was a resident of the United States during the years 1981 through 1984. We so hold. Additions to Tax
Petitioner made no specific additional arguments concerning the additions to tax. Petitioner has the burden of proof with regard thereto. Rule 142(a). We sustain the additions to tax as determined by respondent. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The nominal purchaser of the 5500 Collins Avenue condominium, and of other real property in Florida discussed elsewhere in this opinion, apparently was Alderside Corp., a Panamanian corporation wholly owned by petitioner. Alderside Corp. had no written lease with petitioner with respect to the real property, nor is there any evidence of a loan transaction between Alderside Corp. and petitioner. We treat petitioner as the beneficial owner of the Collins Avenue condominium and of the other real property located in Florida that is mentioned herein.↩