JOHN ERNEST GOLDRING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87498. Promulgated October 27, 1937.

*H. B. Jones, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

---

OPINION.

ARUNDELL: This proceeding raises two questions. First, whether or not the petitioner was a resident of the United States after May 24, 1933. Second, whether he is taxable on the income from the trust created in 1930 for the benefit of his wife and children. In determining the deficiency herein the respondent regarded the petitioner as a resident of the United States during the entire year 1933, and treated as taxable to him the $9,600 payable to petitioner's divorced wife for her use and also the $2,400 payable to her for the support of the two children.

In the amended petition filed the petitioner alleges that he "ceased to be a resident of the United States on or about the 24th day of May, 1933." This we take to be a concession that he was a resident in 1933 until May 24. However, if the quoted allegation can be construed otherwise, the evidence satisfies us that he was a resident from January 1 to May 24, 1933. He bought a house in California in the summer of 1930 and he and his wife intended to establish their residence there. Because of subsequent marital difficulties he never occupied the house, but it is at least doubtful whether he abandoned his intention of establishing residence in California. He retired from active business in Canada, closed his house there, and went to California in September 1930. The petitioner's testimony is that after he and his wife separated he decided that he would not become a permanent resident of the United States. Permanent residence is not necessary to bring an alien within the definition of a resident. See article 1022, Regulations 77. Cf. *J. P. Schumacher*, 32 B. T. A. 1242. The evidence as to petitioner's activities from September 1930 to 1933 is very meager. His testimony is that in that period he was in California "off and on. I was touring around a great deal * * *. We were back and forth to Canada * * *. I was not a permanent resident of any place. I spent some weeks out in the south part, California, in a beach home." In the year before us, 1933, he was living in California at the beginning of the year and remained there until May 24. During the period when, as he testified he was in California "off and on", he several times declared himself to be a resident of California. These declarations appear in the written documents of August 1, 1930, and February 17, 1932, which are described in the findings of fact. The evidence on the point of residence up to May 24, 1933, not only fails to overcome the presumptive correctness of the Commissioner's determination, but tends to support it. For the remainder of the year we are satisfied that the petitioner was not a resident of the United States. The evidence is that on May 24, 1933, he and his second wife packed up their possessions and departed from the United States with the definite intention of taking up residence in Canada and that they carried out that intention. They have been in the United States since then, but only for temporary visits. Consequently, we hold that the petitioner can be classified as a resident in 1933 only for the period ending May 24.

The decisions concerning the taxability of income from trusts established by husbands for the benefit of wives have been recently summarized in *Robert Glendinning et al., Executors*, 36 B. T. A. 486, as follows:

It is now well settled, following the decision in *Douglas* v. *Willcuts*, 296 U. S. 1, that the income of a trust paid directly to a divorced wife is taxable to

the husband who created the trust, whenever the purpose of the trust and the provision for payment of its income is to satisfy a legal obligation of the husband to support and maintain his wife, whether the satisfaction of that obligation results from the payment of alimony decreed by a competent court, or from the carrying out of a separation agreement which provides for such payments in lieu of alimony, dower, or other rights of the wife in the property of the husband. *Albert C. Whitaker*, 33 B. T. A. 865; *Helvering* v. *Brooks*, 82 Fed. (2d) 173. See also *Helvering* v. *Cowey*, 297 U. S. 694, reversing 79 Fed. (2d) 661; *Helvering* v. *Stokes*, 296 U. S. 551, reversing 79 Fed. (2d) 256.

In several recent cases, however, this proposition has been limited, where it appeared that the legal obligation of the husband to support and maintain his wife had been terminated, under the law of a particular state, by divorce or by subsequent remarriage of the wife; *Harry S. Blumenthal*, 34 B. T. A. 994; affd., — Fed. (2d) — (June 28, 1937); *Henry Oliver Rea*, 35 B. T. A. 1132; *Edward T. Hall*, 36 B. T. A. 398. And in these cases it was held that the income of the trust distributed to the wife after divorce or remarriage is not taxable to the husband.

Also, it is now held that income from trusts created for the support of minor children is taxable to the settlor where he is under a legal duty to support them. *Commissioner* v. *Schweitzer*, 296 U. S. 551; *Commissioner* v. *Grosvenor*, 85 Fed. (2d) 2.

The $400,000 face amount of securities placed in trust in this case was held by the trustee on two trusts; one for the benefit of the wife for life and the other for the benefit of the two children. The corpus of each was $200,000. At the time the trust instrument of August 1, 1930, was executed by petitioner and his wife they had reached an agreement settling their dispute over the proceeds of the sale of the Simpson's stock. The trust instrument refers to the fact that an agreement has been reached in connection with certain claims made by the wife. The settlement agreement of the same date refers to the creation of the trust. The settlement agreement provides that "in consideration of the settlement of said stocks and securities [in trust] and of certain other good and valuable consideration" the wife accepts the trust provisions in settlement of her claims in connection with the Simpson's stock and releases her dower in a described parcel of Canadian realty and in any of the lands owned by the petitioner. These facts bring the case within the holding of *Helvering* v. *Brooks*, *supra*. There a husband created an irrevocable trust, to pay the income to his wife as a settlement of their property rights arising from the marital relation. A divorce decree subsequently granted to the wife contained no provision for alimony or settlement of property rights. The opinion reads in part:

* * * The taxpayer argues that there is a distinction between an agreement to pay alimony and an agreement for the settlement of property rights between husband and wife. The asserted distinction is without substance on the present issue. Whether the trust income is used to discharge the husband's duty, made specific by agreement, to support the wife, or to discharge

an obligation to pay her agreed sums for a release of rights in his property cannot be material in determining the taxability of the husband. The creation of a trust the income of which is to be used to discharge any legal obligation of the settlor enables him to enjoy the benefit of the income; hence the income is properly taxable to him.

See, as apparently *contra* to the *Brooks* and *Coxey* cases, *Commissioner* v. *Tuttle*, 89 Fed. (2d) 113.

The argument of the petitioner follows that made in the *Brooks* case, *supra*, claiming a distinction between agreements for settlement of property rights and agreements in contemplation of divorce for the purpose of discharging a husband's family obligations. If any such distinction can be drawn from the decided cases it can not be made here. Although the petitioner testified that the matter of a divorce had not been mentioned when the agreements of August 1, 1930, were executed, it is obvious from the entire record that a separation was imminent. Some marital difficulty had arisen in June 1930; this was followed by the wife's demand for some $450,000 representing the proceeds of the stock; shortly after the agreement the wife sold off the household furniture and, as the petitioner testified, he was forced to move to a hotel in Toronto and Mrs. Goldring went to California. Moreover, the language of the agreements here definitely establishes that they were entered into for the specific purpose of providing for the support of the petitioner's wife and children. Under the trust agreement the wife was to receive certain sums for life "for her separate maintenance and support" and specified amounts for the "ordinary support" of the children. Consequently, it can not be said that they were solely for the purpose of settling the wife's claim growing out of the Simpson's stock or that they were made without reference to petitioner's obligations to support his wife and children. This case is not like the case of *Henry Oliver Rea*, 35 B. T. A 1132, where under state law there was no obligation on the part of the husband to support his wife after divorce. See also *Edward T. Hall*, 36 B. T. A. 398. The statutes of California, applicable here, make it discretionary with the divorce court to compel the husband to provide for support and maintenance of the wife and children. Secs. 137, 139, 142, Civil Code of California.

We are of the opinion that all of the income distributed to the wife in 1933 prior to May 24 is taxable to the petitioner for the reasons above given. If it can be said that the income from $200,000 of the trust fund is primarily for the support of the children, rather than in settlement of the wife's claimed property rights, then that part of the income becomes taxable to the petitioner under the *Schweitzer* and *Grosvenor* cases, *supra*. The son did not become of age until November 1, 1934, which was after the taxable period. The

daughter became of age on May 3, 1933. On May 1, 1933, she received the last installment of the amount set out in the findings of fact as the amount paid her in 1933 prior to the time that the petitioner gave up residence in the United States.

The petitioner having failed to file a return for the year 1933, the imposition of a 25 percent penalty is mandatory. *Scranton, Lackawanna Trust Co., Trustee*, 29 B. T. A. 698; affd., 80 Fed. (2d) 519.

*Decision will be entered under Rule 50.*