RAYMOND A. CRAIG AND NORMA F. CRAIG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11403–78.    Filed March 6, 1980.

Raymond A. Craig, pro se.
*Marguerite F. Gramza,* for the respondent.

TIETJENS, *Judge:* Respondent determined a deficiency of $3,596[1] in petitioners' Federal income tax for 1974. The sole issue for our decision is whether, for the purpose of calculating the foreign earned income exclusion under section 911,[2] petitioner

---

[1]Both parties agree that if respondent's determination is upheld, petitioners' foreign tax credit should be increased by $796, and a decision would, therefore, have to be rendered under Rule 155, Tax Court Rules of Practice and Procedure.

[2]All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise stated.

Raymond A. Craig abandoned his Swiss residence on January 27, 1974, on February 1, 1974, or on May 12, 1974.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference.

At the time they filed their petition, petitioners resided at Wilmington, Del. Petitioners timely filed a joint Federal income tax return with the Philadelphia Service Center of the Internal Revenue Service.

In 1968, petitioner Raymond A. Craig (hereinafter Raymond) was an employee of E. I. du Pont de Nemours & Co. (hereinafter du Pont) in Wilmington, Del. During that year, however, Raymond was assigned to Switzerland and became an employee of du Pont's foreign subsidiary, du Pont de Nemours International, S.A. (hereinafter du Pont International).

From 1968 until sometime in May 1974, petitioners leased a house in Geneva, held memberships in tennis and social clubs, and maintained charge and bank accounts. During this period, their children attended school in Geneva and, specifically, in 1974 Caroline, their only child still living at home that year, completed her sophomore year there. Raymond, however, throughout these years, intended eventually to return to the United States.

On January 27, 1974, Raymond left Switzerland for the United States. He performed business for du Pont International as he had done at various times during the previous 5 years. On February 1, 1974, Raymond began working again for du Pont. On this date for the first time, he discussed salary with du Pont. In addition, prior to his return to the United States, Raymond had no employment agreement with du Pont.

On January 27, 1974, Raymond checked into a hotel with the two suitcases he had brought with him from Switzerland; from January 27, 1974, until May 2, 1974, he lived in a rented furnished single room and ate his meals at restaurants.

On May 2, 1974, Raymond returned to Switzerland and before he and his family left for the United States on May 12, 1974,[3]

---

[3]There is contradictory evidence in the testimony, the stipulation, briefs, and petitioners' tax returns regarding the date petitioners left for the United States. In the testimony, in the stipulation,

Raymond terminated their lease, resigned their memberships in tennis and social clubs, canceled their charge accounts, insurance policies, and church affiliation, and transferred a major part of their Swiss bank account to a United States bank. In June 1974, when their furniture arrived, petitioners established their home in Wilmington.

On January 29, 1974, petitioners filed and paid their 1974 Swiss Federal and Swiss Canton taxes, covering the month of January. They filed and paid no further Swiss taxes because, they assert, under the Swiss Department of Finance interpretation of the U.S.-Swiss Tax Treaty of 1951, resident aliens (United States citizens) are not liable for taxes when they are physically in the United States.

Both parties agree that petitioners were bona fide residents of Switzerland from 1968 through sometime in 1974. Both parties also agree that the income Raymond earned as an employee of du Pont International qualifies as earned income from sources without the United States.[4]

Petitioners contend that Raymond did not abandon his Swiss residence until May 12, 1974. Assuming that we find that Raymond abandoned his residence prior to that date, petitioners argue that Raymond did not abandon his Swiss residence until February 1, 1974, when he became an employee of du Pont.

Respondent, by contrast, contends that, for purposes of calculating the foreign earned income exclusion under section 911, January 27, 1974, is the date Raymond abandoned his Swiss

---

and in parts of both briefs, May 13, 1974, is given as the date of departure. On petitioners' return and in parts of both briefs, May 12, 1974, is used as the departure date. Since both parties agree that 131 days would constitute the proper number of days of Raymond's bona fide Swiss residence should petitioners prevail, we find that petitioners departed on May 12, 1974.

[4]Petitioner's foreign source compensation for the month of January amounted to $26,217 computed as follows:

| | |
|---|---|
| Overseas gross salary from du Pont International............. | $3,995 |
| Less: | |
| Portion earned during U.S. business trips .................... | 682 |
| Plus: | 3,313 |
| Bonus (delivered in January).................................. | 15,070 |
| Value of thrift plan stock..................................... | 108 |
| Subtotal....................................................... | 18,491 |
| Plus: | |
| Fringe benefits (housing allowance, cost of living, school tuition, taxes, foreign social security taxes, appliance, insurance)........................ | $7,726 |
| Total (January)............................................... | 26,217 |

residence. Respondent argues that on that date, Raymond established residency in the United States and merely intended to travel for a short time to Switzerland in order to move his family and possessions to the United States.

## ULTIMATE FINDING OF FACT

Petitioner Raymond A. Craig abandoned his Swiss residence on May 12, 1974.

## OPINION

Section 911[5] provides that bona fide residents of foreign countries may exclude from gross income specified amounts of earned income attributable to sources outside the United States. Section 911(c)(1)(B) limits this exclusion to $25,000 per year in the case of a taxpayer who has been a bona fide resident of a foreign country or countries for an uninterrupted period of 3 consecutive years.[6]

Section 1.911–2(a)(2), Income Tax Regs., provides:

Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined by the application, to the extent feasible, of the principles of section 871 and the regulations thereunder, relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual.

Section 1.871–2(b), Income Tax Regs., provides:

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. * * *

Section 1.871–5, Income Tax Regs., provides:

Loss of residence by an alien.

An alien who has acquired residence in the United States retains his status as a resident until he abandons the same and actually departs from the United

---

[5] Sec. 911 was significantly changed by the Foreign Earned Income Act of 1978, Pub. L. 95–615, 92 Stat. 3098.

[6] Petitioners and respondent agree that the following formula should be applied to determine petitioners' allowable exclusion for 1974:

$$\frac{\text{Number of days of bona fide residence}}{\text{Number of days in the taxable year}} \times \$25,000 = \text{allowable exclusion}$$

Petitioners contend 131 is the correct numerator in the above fraction while respondent argues that 26 is the correct amount. Petitioners, therefore, claim an $8,973 exclusion while respondent maintains $1,781 is petitioners' allowable exclusion.

States. An intention to change his residence does not change his status as a resident alien to that of a nonresident alien. Thus, an alien who has acquired a residence in the United States is taxable as a resident for the remainder of his stay in the United States.

Petitioners urge us to use the criteria enunciated in section 1.871–5, Income Tax Regs., to determine when Raymond abandoned his Swiss residence. Respondent argues, however, that the standards of section 1.871–2(b) should be applied to Raymond. Respondent argues that since on his return Raymond became a United States resident, at that point, he was no longer a Swiss resident.

We agree with petitioner that section 1.871–5, Income Tax Regs., is the pertinent one on the issue of when Raymond abandoned his Swiss residence. Although, by applying section 1.871–2(b), we might conclude that Raymond became a United States resident on his arrival in the United States or at least when he became employed by du Pont, such a determination would be immaterial to the issue before us. We have repeatedly found that an individual may have more than one residence. *Marsh v. Commissioner*, 68 T.C. 68 (1977), affd. 588 F.2d 1350 (4th Cir. 1978); *Dillin v. Commissioner*, 56 T.C. 228 (1971); *Jellinek v. Commissioner*, 36 T.C. 826 (1961). Contra, *Seeley v. Commissioner*, 186 F.2d 541 (2d Cir. 1951).

The issue of residency is a factual one. *Dillin v. Commissioner, supra; Adams v. Commissioner*, 46 T.C. 352 (1966). Once a taxpayer establishes residency, it is presumed to continue until it has been shown to have been abandoned. *Friedman v. Commissioner*, 37 T.C. 539 (1961). Absence from one's residence, even for a long time, does not in itself establish abandonment. *Marsh v. Commissioner, supra; Friedman v. Commissioner, supra.*

In *Goldring v. Commissioner*, 36 B.T.A. 779 (1937), we found that the taxpayer, a Canadian citizen, abandoned his United States residence when he and his second wife took all their possessions and left the United States with the definite intention of not returning. Likewise, in *Baer v. Commissioner*, 6 T.C. 1195 (1946), applying the *Goldring* test, we found that the facts did not support a finding that taxpayer, a Swiss citizen, had abandoned his United States residence since, despite his absence from the United States, he and his family had not "packed up their possessions and departed with no intention of returning." (6 T.C. at 1200.) Accord, *Friedman v. Commissioner, supra.*

In the instant case, Raymond came to the United States on January 27, 1974, with two suitcases, checked into a hotel, ate his meals at restaurants, and had no employment agreement with du Pont. Even on February 1, 1974, when he began to work for du Pont, he intended to return to Switzerland. When he was in the United States, he did not intend to abandon the rest of his possessions or his family; certainly, his community and family ties remained in Switzerland. Similarly, his absence from Switzerland for only 3 months does not establish that Raymond had the requisite intent to abandon his Swiss residence.

Because we find that Raymond abandoned his Swiss residence on May 12, 1974, we hold that petitioners are entitled to exclude, as earned income from sources outside the United States, $8,973 from their gross income in 1974.

*Decision will be entered for the petitioners.*