THOMAS L. HOSKINS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTELA N. HOSKINS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Hoskins v. Commissioner
Docket Nos. 21203-80, 21245-80.
United States Tax Court
T.C. Memo 1983-508; 1983 Tax Ct. Memo LEXIS 280; 46 T.C.M. (CCH) 1172; T.C.M. (RIA) 83508; August 22, 1983. *280 H, a U.S. citizen, married W, a citizen of Argentina, in 1970. W came to U.S. in 1970 giving as the reason her marriage and stating an intention to make U.S. her permanent residence. They lived in Louisiana until December 1973 when they sold everything and moved to England where H took a job as a diver. They kept a joint bank account in Louisiana. In 1974, while on a U.S. visit, H purchased a home in Arizona in joint names and rented a safe deposit box. In August 1977 H and W returned to U.S. and moved into Arizona house. H has taken short job assignments outside U.S. since 1977. Held, W did not carry her burden that she had abandoned her permanent residence in U.S.
Walter W. Kingsbery and Andrew S. Friedman, for the petitioners. Martha Combellick, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: [1]
Docket
Taxable year
No.
Petitioner
ended Dec. 31,
Deficiency
21203-80
Thomas L. Hoskins
1975
$2,143.87
21245-80
Estela N. Hoskins
1975
10,280.39
1976
5,307.15
After concessions, the sole issue remaining for decision is whether petitioner Estela N. Hoskins was a resident or a non-resident alien of the United States for Federal income tax purposes under sections 871- 874, I.R.C. *282 1954, during the taxable years in issue. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, Thomas L. Hoskins and Estela N. Hoskins, were residents of Scottsdale, Arizona at the time of filing their petitions in this case. Petitioner Estela N. Hoskins (hereinafter referred to as Mrs. Hoskins) filed a U.S. Non-resident Alien income tax return for the years 1974, 1975 and 1976 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Petitioner Thomas L. Hoskins (hereinafter referred to as Mr. Hoskins) filed a Federal income tax return for the year 1975 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Mr. Hoskins was born in Arizona in 1939 and lived there until he joined the Army in 1960. After being discharged from the Army in 1963, Mr. Hoskins returned to Arizona until 1964. He then moved to California, where he worked and attended diving school until 1967. In 1967 Mr. Hoskins moved to Louisiana, where he was employed as a diver. He later moved to Central America in 1968, where he worked as a diver for 6 *283 months, and then to Argentina, where he was employed for 1 year. It was during this time that he met his wife. Mrs. Hoskins is a citizen of Argentina. She was born in Argentina in 1946 and lived there until her marriage to Mr. Hoskins on March 24, 1970. After their marriage, Mr. and Mrs. Hoskins came to the United States in April of 1970 for a 3-week honeymoon. At that time, Mrs. Hoskins applied for entry into the United States as a resident alien. On the application that she filed on April 1, 1970 with the Immigration and Naturalization Service, she indicated that her reason for requesting entry into the United States was her marriage to Mr. Hoskins and further stated that she intended to reside in the United States on a permanent basis. On April 3, 1970, Mrs. Hoskins was issued an alien registration card ("green card"), which signified that she had been granted permanent residency status in the United States. After their 3-week honeymoon in the United States, Mr. and Mrs. Hoskins moved to Australia where Mr. Hoskins was employed for approximately 6 months. They returned to the United States in December 1970 upon completion of Mr. Hoskins' job in Australia. At that time, *284 petitioners moved to Morgan City, Louisiana, where Mr. Hoskins was employed as a diver by Taylor Diving & Salvage Co., Inc. (hereinafter Taylor Diving), a U.S. corporation. Petitioners purchased a home in Morgan City, Louisiana and lived there from December 1970 through December 1973. During that period of time petitioners had their first two children. In 1973, Taylor Diving offered Mr. Hoskins a long-term diving assignment in England. He accepted the job because it afforded him the opportunity to engage in "saturation diving," a diving technique which he had little chance to perform in the United States; because it was to be a long-term job which would enable him to settle his family in England; and because of the favorable tax treatment available to foreign residents. Pursuant to taking this assignment, Mr. Hoskins signed an 18-month contract; however, the contract contained a clause that allowed Mr. Hoskins to seek relief from the contract after 120 days. [2]
In December 1973, *285 petitioners and their two children moved to England. Mr. Hoskins was admitted to the United Kingdom on his United States passport, with a United Kingdom work visa authorizing his stay in England for a 1-year period, while Mrs. Hoskins obtained her admittance via her Argentinian passport. Mrs. Hoskins and petitioners' children were also given 1-year visas authorizing them to live in England. Both petitioners' and their children's visas were renewable on a yearly basis. Prior to leaving the United States, petitioners sold their home, automobiles, and furniture in Morgan City, Louisiana; however, they retained their checking account in Louisiana during their entire stay in England. Upon arriving in England in December 1973 petitioners rented a furnished home with a 1-year lease, and they remained there for their entire stay in England. While petitioners were in England, their two oldest children attended English public schools, and Mrs. Hoskins gave birth to their third child. During his employment in England, Mr. Hoskins received a salary from Taylor Diving of $80,799.92 in 1975 and $59,919.82 in 1976. These amounts, less Federal withholding taxes, were deposited in the bank *286 account retained by petitioners in Morgan City, Louisiana. The Morgan City bank would convert a portion of these wages into British pounds, sending petitioners a cashier's check for 500 pounds (approximately $1,150) monthly to cover their expenses in England. The remainder of the wages received by Mr. Hoskins, which approximated $40,000 after taxes in 1975 and $25,000 after taxes in 1976, was left in the United States by petitioners. In 1974 Mr. Hoskins returned to the United States to visit Arizona. While in Arizona, he investigated possible property investments. After the visit, petitioners purchased a residence in Arizona, title to which was taken in both petitioners' names. Petitioners rented this residence to others until their return to the United States in 1977, at which time they moved into the residence themselves. During his visit to Arizona in 1974, Mr. Hoskins also rented a safe deposit box with Valley National Bank. He utilized this safe deposit box to store some silver bullion he had purchased for investment purposes. In 1975 Mrs. Hoskins' name was added by mail to the signature card for the box. Petitioners lived in England for a period of 3 years and *287 8 months. During this period of time, Mr. Hoskins claimed an Arizona domicile for Federal tax purposes. In August 1977, petitioners left England and moved to Arizona, where they have maintained a home until the present date. Petitioners' decision to leave England was precipitated by three major reasons: (1) the workload was cut back, (2) Taylor Diving had relocated, and (3) the Tax Reform Act of 1976 eliminated many of the advantageous aspects of working overseas. Mr. Hoskins did not seek other employment in England upon the cutback of the workload by Taylor Diving.
Mrs. Hoskins used her Argentinian passport and the green card, which she had obtained in 1970, to reenter the United States in 1977. According to a stamp dated August 31, 1977 that appears on Mrs. Hoskins' passport, she was admitted to the United States at Chicago, Illinois as a returning resident of the United States. Upon returning to the United States, petitioners stayed with friends for about 3 weeks and then moved into the residence they had purchased in Arizona in 1974. Mr. Hoskins was still employed by Taylor Diving and has continued such employment to the present date. His first job assignment after petitioners' *288 return to the United States was with Taylor Diving in England. Mr. Hoskins left for England in May 1978 for a 3-month assignment and returned again to Arizona upon the completion of this assignment. Since his return to the United States in August 1977, Mr. Hoskins has worked in England on two short-term assignments and in Mexico for the last 2 years. With respect to each of Mr. Hoskins' work assignments outside the United States, petitioners returned to the United States immediately upon the termination of the employment outside the United States. Mr. Hoskins filed separate individual income tax returns for the years 1975 and 1976, reporting one-half of the income earned by him in those years based upon his domicile in Arizona, a community property state. Mrs. Hoskins filed U.S. Nonresident Alien income tax returns for those years. In his notice of deficiency to Mrs. Hoskins, respondent determined that she was a resident alien rather than a non-resident alien and that consequently her community income in the amounts of $40,608 in 1975 and $30,838 in 1976 was properly includable in her gross income. Based on this determination of Mrs. Hoskins' status as a resident alien, respondent *289 determined in his notice of deficiency to Mr. Hoskins that he was required to file his income tax return for the year 1975 as "Married Filing Separate" rather than "Unmarried Head of Household" since he was married, living with his wife, and did not elect to file a joint return. OPINION The parties are in agreement that the sole issue for decision is whether Mrs. Hoskins, an alien, was a resident of the United States for Federal income tax purposes during the years in issue. Under sections 871-874, a resident alien is taxable on all income from whatever sources derived; while a nonresident alien, on the other hand, is taxable only on income derived from sources within the United States. If Mrs. Hoskins was a nonresident alien during the years in question, then one-half of her husband's income from sources without the United States, attributable to her under the community property laws of the State of Arizona, would be excluded from income. However, if Mrs. Hoskins was a resident alien during the years in question, then she would be taxed on her income in the United States, wherever *290 earned. Marsh v. Commissioner,68 T.C. 68, 71 (1977), affd. per order 588 F.2d 1350 (4th Cir. 1978). Thus, if Mrs. Hoskins was a resident of the United States during 1975 and 1976, she is properly taxable on her share of Mr. Hoskins' income earned in England which was attributed to her under the community property laws of Arizona. The question of residency is one of fact which must be determined based upon the circumstances of each individual case. Dillin v. Commissioner,56 T.C. 228, 242 (1971). In determining whether an alien is a resident or nonresident, section 1.871-4(b), Income Tax Regs., provides that an alien, by reason of her alienage, is presumed to be a nonresident alien.However, this initial presumption is rebutted by acts and statements of an alien showing a definite intention to acquire residency in the United States. Sec. 1.871-4(c) (2) (iii), Income Tax Regs. In the instant case, petitioners do not dispute that Mrs. Hoskins established her residency, as a resident alien, *291 in the United States in 1970. Therefore, the presumption of nonresidency provided in the regulations is rebutted, and the burden of proof is on petitioners to establish nonresidency. Lemery v. Commissioner,54 T.C. 480, 486 (1970). Once an alien has acquired residency in the United States, she retains such status until she abandons it and actually departs from the United States. Sec. 1.871-5, Income Tax Regs. In determining whether residency, once established, has been abandoned, the intention of the individual involved carries great weight. Adams v. Commissioner,46 T.C. 352, 361 (1966). One may be a resident of more than one country, Park v. Commissioner,79 T.C. 252, 287 (1982), and neither the fact that the individual is absent from the United States for a long period of time nor the fact that she has established foreign residency will be determinative of abandonment of the United States residency. Marsh v. Commissioner,supra at 72. We are thus concerned in the instant case not with whether Mrs. Hoskins established foreign residency in England, but, rather, whether she *292 ceased to be a United States resident. In this regard, it is necessary for petitioners to prove that Mrs. Hoskins intended to abandon her United States residency and that she departed the United States "with the definite intention of not returning." Craig v. Commissioner,73 T.C. 1034, 1038 (1980). We are convinced that Mrs. Hoskins never formulated that requisite intent. Petitioners contend that Mrs. Hoskins was unhappy in Morgan City and intended not to return to the United States when they moved to England in December 1973.However, it is clear from the record that her intentions cannot be viewed in a vacuum but must be examined in conjunction with her husband's intentions. Mrs. Hoskins came to the United States and sought residency because of her marriage to Mr. Hoskins. After their honeymoon in the United States, she went to Australia with her husband in 1970 because of his employment there. Upon termination of Mr. Hoskins' employment in Australia, Mrs. Hoskins returned to the United States with her husband and lived for 3 years in Louisiana where Mr. Hoskins was then employed. When Mr. Hoskins subsequently accepted employment in England in 1973, Mrs. Hoskins *293 again moved with her husband and again returned to the United States over 3 years later when his employment in England terminated.In light of petitioners' marital history, it appears that Mrs. Hoskins intended to accompany her husband whenever possible and her residency status was, to a great extent, dictated by her husband. Consequently, in order to ascertain Mrs. Hoskins' residency status, it is necessary for us to consider Mr. Hoskins's intentions. On every occasion that Mr. Hoskins left the United States on a job assignment (both before and after his marriage to Mrs. Hoskins), he always returned to the United States upon completion of his foreign assignment. petitioners argue that they intended their move to England to be permanent. However, when Mr. Hoskins' assignment with Taylor Diving in England ended, Mr. Hoskins did not seek other employment in England but instead returned to the United States. These actions are certainly inconsistent with their claimed intention to make their move to England permanent. Petitioners rely on the fact that they sold their home, furniture, and automobiles in Morgan City, Louisiana as evidence of their intention not to return to the United *294 States. However, Mr. Hoskins grew up in Arizona and claimed that state, not Louisiana, as his domicile. His only attachment to Louisiana was his employment there, and the sale of their home in Louisiana indicates nothing more than a desire not to return to Louisiana. Upon moving to England, petitioners chose not to replace the home they sold in Louisiana, but instead leased a furnished home in England on a yearly basis. However, while merely leasing a home in England, Mr. Hoskins returned to the United States in 1974 to purchase a residence in Arizona, the state which he claimed as his domicile; and upon their return to the United States in 1977, petitioners resided in such residence following a brief stay with friends. These facts are again inconsistent with petitioners' stated intention permanently to leave the United States. Additionally, Mr. Hoskins maintained a safe deposit box and a bank account in the United States during his stay in England. Mr. Hoskins opened the safe deposit box in Arizona during his visit there in 1974 and subsequently added Mrs. Hoskins' name to the signature card by mail. Petitioners never closed their checking account in the United States; *295 and during their stay in England, Mr. Hoskins' earnings from Taylor Diving were deposited in that account. Petitioners then removed a relatively small portion of such earnings for living expenses in England keeping their remaining earnings in the United States. Surely, if petitioners had no intention of returning to the United States to live, it would have been more convenient to maintain their entire bank account in England. These actions again seem inconsistent with petitioners' alleged intentions, and petitioners have offered little explanation as to why they kept a very large amount of Mr. Hoskins' earnings in the currency of a country to which they did not intend to return. All of these factors indicate that petitioners did not intend to abandon permanently their United States residency but instead intended to reside outside the United States as long as the foreign employment, and income tax benefits derived therefrom, existed. When Mr. Hoskins' employment in England with Taylor Diving ended, petitioners returned to the United States even though there were no employment opportunities available to Mr. Hoskins in the United States at that time. In point of fact, Mr. Hoskins' *296 first assignment after returning to the United States was back in England in May 1978. Thus, the only apparent reason for petitioners' decision to return to the United States in 1977 was to return home. Mrs. Hoskins kept her green card during their entire stay in England and used it in 1977 to gain readmission into the United States. Although she stayed in England for over 3 years, it is well established that a lengthy absence by itself from the United States does not destroy her already established status as a resident. Marsh v. Commissioner,supra at 74. It is true that some statements can be taken from petitioners' testimony, when considered in isolation, to support a holding that Mrs. Hoskins intended to surrender her resident status in 1973. However, the testimony taken in bulk is not that clear and in fact is somewhat contradictory. We believe it appropriate to rely more on the objective facts and here they weigh heavily against petitioners' position. These facts reveal a disposition on Mrs. Hoskins' part, not having an independent career of her own, to *297 follow her husband and the father of her children where his work and desires took him. The joint bank account and the acquisitions in Arizona, held in joint names, particularly confirm the existence of this disposition. Accordingly, we hold that petitioners have failed to carry their burden that Mrs. Hoskins had the requisite intent to abandon her resident status in the United States upon moving to England. Decisions will be entered for the respondent.
Footnotes
1. The notices of deficiency were dated Aug. 21, 1980.↩
2. When employed in England, Mr. Hoskins would work for 120 days, ask for relief which would terminate the contract, and then he would sign another contract when he was ready to return to work.↩