LEONCIO A. VAZQUEZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vazquez v. Commissioner
Docket No. 7103-90
United States Tax Court
T.C. Memo 1993-368; 1993 Tax Ct. Memo LEXIS 383; 66 T.C.M. (CCH) 406; August 19, 1993, Filed *383 Decision will be entered under Rule 155. Leoncio A. Vazquez, pro se. [1]
For respondent: Donna C. Hansberry and Karen P. Wright. PARKER
PARKER
MEMORANDUM OPINION PARKER, Judge: In a notice of deficiency dated January 19, 1990, respondent determined deficiencies in petitioner's Federal income *384 tax and additions to the tax as follows: Additions to Tax Year
Deficiency
Sec.6653(b)
Sec.6654
1975
$ 58,518.81
$ 29,259.41
$ 2,533.79
1976
$ 53,809.01
$ 26,904.50
$ 2,004.04
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues remaining for decision are: 1. Whether petitioner was a bona fide resident of Puerto Rico during 1975 and 1976 and therefore entitled to exclude from gross income earnings derived from sources within Puerto Rico under section 933(1); 2. Whether petitioner received gross income in the amounts of $ 109,575.58 in 1975 and $ 102,245.58 in 1976, which amounts petitioner failed to report in such years; 3. Whether petitioner is entitled to elect joint filing status under section 6013(a); 4. Whether respondent has established fraud by clear and convincing evidence; and 5. Whether petitioner is liable for additions to tax for failure to pay estimated income tax pursuant to section 6654. For convenience, our findings of fact and opinion on each issue will be combined, but each *385 issue will be discussed under a separate heading. I. General Background
Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Leoncio A. Vazquez (petitioner) resided in Chicago, Illinois, at the time he filed his petition. Petitioner was born in San Lorenzo, Puerto Rico and attended school in Puerto Rico until the ninth grade. He lived in Puerto Rico until August of 1953 when he came to the United States. He settled in Chicago, Illinois, and made trips once a year to Puerto Rico to visit his family. Petitioner has been married twice. Petitioner's first wife was Enoes Ortiz (Enoes). Petitioner and Enoes have three children born of that marriage, Semiramis, Edmundo, and Alberto. After obtaining a divorce from Enoes, petitioner married Josephine Zapata (Josephine) in 1971, and they have two children born of that marriage, David and Hector. Petitioner and Josephine were married during the taxable years at issue. They were divorced in 1989. II. Petitioner's Residency
Petitioner argues that he was a resident of Puerto Rico, not of the United States, during 1975 and *386 1976. Thus, petitioner claims the exclusions from gross income provided by section 933. Section 933(1) provides that, in the case of an individual who is a bona fide resident of Puerto Rico "during the entire taxable year", income derived from sources within Puerto Rico shall not be included in gross income and shall be exempt from United States income tax. [2] An individual who takes up residence in Puerto Rico during the course of the taxable year is not entitled to the exclusion for that year. Sec. 1.933-1(a), Income Tax Regs. In Motion v. Commissioner, T.C. Memo. 1975-43, this Court held that the taxpayer, who resided in Puerto Rico from March through December of 1970, was not a resident of Puerto Rico for the entire 1970 taxable year. Thus, the taxpayer was not entitled to exclude from his gross income his earnings in Puerto Rico from March through December of 1970. *387 Section 933 does not contain a definition of the term "bona fide resident" of Puerto Rico. However, the regulations under section 933 direct us to section 871 and the regulations thereto. Sec. 1.933-1(a), Income Tax Regs. Thus, this Court determines whether an individual is a bona fide resident of Puerto Rico by analyzing the facts and circumstances in each case and applying the principles of section 1.871-2, 1.871-3, 1.871-4, and 1.871-5, Income Tax Regs.Sec. 1.933-1(a), Income Tax Regs.; cf. Preece v. Commissioner, 95 T.C. 594 (1990) (applying facts and circumstances test of section 1.871-2, Income Tax Regs., to determine whether the taxpayers in that case (U.S. citizens) were residents of the Commonwealth of the Northern Mariana Islands). Section 871 and the regulations under that section provide rules for determining whether an alien individual is a resident of the United States. Generally, resident aliens are taxable the same as U.S. citizens, whereas nonresident aliens are taxable only on certain income from sources within the United States. A nonresident alien is an individual whose residence is not within the United States and who is *388 not a citizen of the United States. Sec. 1.871-2(a), Income Tax Regs. An alien individual is a resident of the United States if he is actually present in the United States and is not a mere transient or sojourner, which depends upon his intentions as to the length and nature of his stay. Sec. 1.871-2(b), Income Tax Regs. The fundamental issue in determining residency is whether the alien intends to make the United States his home. See Jones v. Commissioner, 927 F.2d 849, 854 (5th Cir. 1991), revg. T.C. Memo. 1989-616; Dawson v. Commissioner, 59 T.C. 264, 268 (1972). [3]
*389 The Court of Appeals for the Seventh Circuit, to which any appeal in this case will lie, has held that the determination of whether a citizen of the United States has established that he was a bona fide resident of a foreign country is a "conclusion of law or at least a determination of a mixed question of law and fact". Sochurek v. Commissioner, 300 F.2d 34, 37 (7th Cir. 1962) (quoting Bogardus v. Commissioner, 302 U.S. 34, 39 (1937)), revg. and remanding 36 T.C. 131 (1961). There, the Seventh Circuit held that an unmarried taxpayer who was a full time news correspondent and who had established a temporary home in Singapore (and maintained it throughout the entire taxable year) was not a transient or sojourner but was a bona fide resident of a foreign country. The taxpayer was entitled to exclude from gross income the compensation he received from his employer during the taxable year. In determining whether the taxpayer had satisfactorily established his claim of bona fide residence in a foreign country, the Seventh Circuit enumerated various factors to be considered: (1) intention of *390 the taxpayer; (2) establishment of his home temporarily in the foreign country for an indefinite period; (3) participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment; (4) physical presence in the foreign country consistent with his employment; (5) nature, extent and reasons for temporary absences from his temporary foreign home; (6) assumption of economic burdens and payment of taxes to the foreign country; (7) status of resident contrasted to that of transient or sojourner; (8) treatment accorded his income tax status by his employer; (9) marital status and residence of his family; (10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time; (11) good faith in making his trip abroad; whether for purpose of tax evasion.
Sochurek v. Commissioner, 300 F.2d at 38. The Seventh Circuit further stated that "While all such factors may not be present in every situation, those appropriate should be properly considered and weighed." *391 Id. Application of these various factors is essentially tantamount to the facts and circumstances test mandated by the regulations applicable to section 933(1). The documentary and testimonial evidence in the record of this case supports a finding that petitioner was not a bona fide resident of Puerto Rico for the full taxable year, within the meaning of section 933(1), for 1975 but was such a resident for 1976. After petitioner married Josephine, they lived in Chicago, Illinois, in a house owned by petitioner located at 3259 W. Wabansia. However, petitioner talked constantly about his desire to move to Puerto Rico. During this time, petitioner continued to make trips to Puerto Rico once a year or so to visit his parents, his former wife, and his children by his first marriage, all of whom were living in Puerto Rico. In 1974, petitioner discussed with Josephine his dream of returning to live in his home town of San Lorenzo, Puerto Rico. He wanted to return to Puerto Rico in order to be closer to his family and to raise his five children together. Sometime between 1974 and 1975, Josephine agreed that she and petitioner should move to Puerto Rico. After petitioner and Josephine *392 decided to relocate their family to Puerto Rico, petitioner began to make frequent trips between Chicago and Puerto Rico in 1975. Petitioner took clothing, shoes, and personal items, but no furniture or large items with him to Puerto Rico and stayed with his parents in San Lorenzo for extended periods. He rented a car during these stays. Josephine did not accompany petitioner at this time because she did not want to live with petitioner's parents. During the summer of 1975, petitioner went to visit his three children of his first marriage who were living in Santa Isabel, Puerto Rico. While in Santa Isabel, petitioner saw a house with which he was quite taken and that he wanted his children to have. He arranged for himself and Josephine to purchase this house (the Santa Isabel house) and donate it to Semiramis, Edmundo, and Alberto, the children of his first marriage. Also, in the summer of 1975, petitioner began to look for a house to purchase for himself, Josephine, and their two children. Petitioner was convinced, by that time, that he wanted Puerto Rico to be his home for the rest of his life. Petitioner found a house in Barrio Quebrada, San Lorenzo (the Barrio Quebrada *393 house). Josephine traveled to Puerto Rico to see the house, and petitioner and Josephine decided to purchase this house as well. Petitioner moved into the Barrio Quebrada house soon after the closing in November of 1975 in order to repair the house and prepare it for Josephine and their children. At that time, Josephine still intended to move to Puerto Rico but wanted to wait until August of 1976, the end of the boys' 1975-1976 school year. Josephine, David, and Hector moved into the Barrio Quebrada house in August of 1976. Thereafter, Josephine enrolled David and Hector in a Puerto Rican school for the upcoming school year. After Josephine, David, and Hector moved to Puerto Rico, Josephine's parents (petitioner's in-laws) and her three sisters moved into petitioner's house at 3259 W. Wabansia in Chicago, Illinois. Petitioner's in-laws moved into the house the second week of August 1976 and remained in that house for 2 years. During the late summer of 1975, petitioner established a banking relationship at the Banco Popular de Puerto Rico in San Lorenzo. On September 13, 1975, petitioner opened an account in his name (#42-790294) at Banco Popular de Puerto Rico with a deposit *394 of $ 1,700. A second deposit of $ 15,000 was made into that account on April 23, 1976, and a third deposit of $ 25,000 was made on November 26, 1976. In December of 1976, petitioner opened a savings account for each of his three children from his first marriage. He deposited $ 10,000 in cash into each account, to be used by each child for his or her college education or other training. Petitioner did not have any bank accounts in the United States during 1975 or 1976. By applying the factors enumerated in Sochurek v. Commissioner, supra, we conclude that petitioner has established that he was a bona fide resident of Puerto Rico for the full taxable year 1976. Petitioner intended to make Puerto Rico his permanent home. During 1975, petitioner began to take steps to establish residency in Puerto Rico. He stayed with his parents while looking for a house to purchase. He traveled frequently between Chicago and Puerto Rico, visiting and making arrangements to move his family. By the end of 1975, petitioner had opened a bank account and established his home in Puerto Rico for an indefinite period by purchasing and moving into the Barrio Quebrada *395 house. We find that, by 1976, petitioner was spending much more of his time in Puerto Rico than in Chicago. When petitioner did leave Puerto Rico periodically to return to Chicago in 1976, petitioner was merely visiting Josephine, David, and Hector and helping them arrange to move to Puerto Rico, not maintaining his own residency, for purposes of section 933, in the United States. Unlike the taxpayer in Sochurek, petitioner was married at that time, with dependents; however, the family intended to be reunited in Puerto Rico. Josephine did not join petitioner in Puerto Rico earlier because she did not want to live with petitioner's parents while looking for their own home, and she did not want to disrupt the children's school year. Respondent offers certain documentary evidence to bolster her contention that petitioner was not a resident of Puerto Rico during 1975 or 1976. First, respondent submits the documentation for petitioner's purchases of property in Puerto Rico, which recite that petitioner was a resident of Chicago, Illinois. Respondent also submits evidence that petitioner was in Chicago in August of 1976, arranging to ship the family's household goods to Puerto *396 Rico and indicating that his address was in Chicago. Respondent further points to petitioner's renewal of his Illinois driver's license and his State Farm Insurance application as supporting the proposition that petitioner remained a resident of Chicago, Illinois, throughout 1975 and for much of 1976. We conclude that petitioner has sufficiently established that he was a resident of Puerto Rico in 1976 and that respondent's evidence is not inconsistent with this finding. The documentation for petitioner's purchases of property in Puerto Rico does support respondent's contention that petitioner was not a resident of Puerto Rico in 1975 but is not inconsistent with our finding that petitioner was a resident of Puerto Rico in 1976. In 1975, petitioner and Josephine purchased the house located in Santa Isabel, Puerto Rico (the Santa Isabel house), for donation to petitioner's children from his first marriage. The Contract of Segregation, Sale and Release of Mortgage pertaining to that purchase, executed on August 27, 1975, states that: Mr. LEONCIO VAZQUEZ AYALA and his wife Mrs. JOSEPHINE ZAPATA DE VAZQUEZ, each of legal age, married to each other, property owners and residents *397 of the city of Chicago, State of Illinois, United States of America, presently in passing in San Juan, Puerto Rico, * * *
On August 27, 1975, petitioner and Josephine donated the Santa Isabel house to Semiramis, Edmundo, and Alberto. The Contract of Donation of the house reiterates this same language. These documents are consistent with respondent's assertion that petitioner was a resident of the United States during 1975 and with testimony that petitioner traveled frequently between the United States and Puerto Rico during 1975. However, these documents are not inconsistent with petitioner's having established residency in Puerto Rico for the full taxable year 1976. Petitioner and Josephine retained Gilberto Cuevas to work out the details of the purchase of the Barrio Quebrada house. Mr. Cuevas is an attorney in Puerto Rico and has been licensed to practice law for 30 years. Petitioner and Josephine closed on the purchase of the Barrio Quebrada house on November 15, 1975. Title of the house was placed in the names of petitioner and Josephine Vazquez. Mr. Cuevas drafted the language of the Sale Agreement pertaining to the purchase of the Barrio Quebrada house. The agreement, *398 executed on November 15, 1975, states that: Mr. Leoncio Vazquez and Mrs. Josephine Vazquez, (both) of legal age, married to each other, property owners and residents of the city of Chicago, Illinois, but with temporary residency in San Lorenzo, Puerto Rico.
Mr. Cuevas drafted and attested to this information in the Sale Agreement, because petitioner and Josephine told him that they were residents of Chicago but that they were temporarily residing in San Lorenzo at the time and were in the process of moving to San Lorenzo. We do not find these statements made by petitioner and Josephine in 1975 to be inconsistent with petitioner's establishing residence in Puerto Rico for 1976. Mr. Cuevas supported petitioner's testimony that he (petitioner) moved into the Barrio Quebrada house soon after the closing in November of 1975: Mr. Cuevas recalled that petitioner came to his office in January or February of 1976 to pick up the recorded deed of the house and stated that he had moved into the house to repair it for Josephine's and the boys' arrival. Mr. Cuevas further testified that he saw petitioner in San Lorenzo seven or eight times in 1976 and that, to the best of his knowledge, *399 petitioner lived in San Lorenzo, Puerto Rico, during 1976. As opposed to that testimony is the testimony of Mr. Jose Ortiz, the bank clerk who helped petitioner open the three savings accounts for his three children of the first marriage. Mr. Ortiz had a clear recollection of the events because he found it so unusual for a bank customer to open three accounts on three successive days, with $ 10,000 in cash on each occasion. Mr. Ortiz testified that when those accounts were opened in December of 1976, petitioner told him (Mr. Ortiz) that he (petitioner) had just recently moved to Puerto Rico. That suggests that petitioner became a resident of Puerto Rico much later than he now claims, but it is also generally consistent with the fact that his wife and sons had only recently arrived there. Respondent asserts that petitioner's presence in Chicago, Illinois, in August of 1976 to make moving arrangements and to renew his Illinois driver's license supports a finding that petitioner did not move to Puerto Rico until at least August of 1976 and was not a resident of Puerto Rico for the full taxable year of 1976. We do not agree. Petitioner traveled to Chicago in August of 1976 to arrange *400 to ship his family's belongings and an automobile from the United States to San Lorenzo, Puerto Rico. [4] A receipt issued by Pan-American Express, Inc., reflects petitioner as the shipper of the goods and states that his address is 3259 W. Wabansia, Chicago, Illinois. Josephine was listed on the receipt as the consignee at a San Lorenzo, Puerto Rico, address. However, this document merely indicates that petitioner was present in Chicago in August of 1976 to help his family move and does not, in and of itself, negate his residency in Puerto Rico for all 1976. *401 On August 31, 1976, petitioner signed an application for renewal of his Illinois driver's license. The application reflects that petitioner's address was 3259 W. Wabansia, Chicago, Illinois. On September 23, 1976, petitioner signed and filed a vehicle registration application with the State of Illinois for his 1973 Monte Carlo automobile. The application reflects petitioner's address as 3259 W. Wabansia, Chicago, Illinois. In addition, an agent for State Farm Insurance transferred the coverage on petitioner's policy from petitioner's 1972 Oldsmobile automobile to his 1973 Monte Carlo on September 20, 1976. The State Farm policy remained in petitioner's name with his Chicago, Illinois, address. Petitioner testified that, when he returned to Chicago in August of 1976, he realized that his driver's license was about to expire. The car that he would drive while in the United States (which appears to be the 1973 Monte Carlo) was kept in the garage of the house he continued to own at 3259 W. Wabansia. He renewed the license because he thought that it was illegal for him to drive a car in Illinois without an Illinois driver's license. Although petitioner had a Puerto Rican driver's *402 license, he did not think that, if stopped, an American police officer would accept it. Although petitioner's explanations were at times inconsistent and self-serving, the documents submitted by respondent, standing alone or in combination, do not contradict petitioner's assertion that he was a resident of Puerto Rico in 1976. [5] Once a taxpayer establishes a residence, it is presumed to continue until it is shown to have been abandoned. Craig v. Commissioner, 73 T.C. 1034, 1038 (1980); Friedman v. Commissioner, 37 T.C. 539 (1961). Moreover, we have held that the mere fact of absence from a residence for even a relatively long period of time does not, of itself, destroy that residency for tax purposes. Id.
*403 One must look at the intent of the taxpayer when determining residency. Friedman v. Commissioner, supra. We think that petitioner intended at the time to make Puerto Rico his permanent home and had done so by November of 1975. Petitioner also intended to occasionally visit Chicago because he still owned a house in Chicago and his in-laws were living in that house. He did not intend to abandon his residency in Puerto Rico when visiting Chicago. Respondent also submitted various documents, relating to the case against petitioner for criminal tax evasion, for impeachment purposes. Petitioner was indicted for tax evasion, pursuant to section 7201, for the taxable years 1975 and 1976. Pursuant to a plea of nolo contendere, petitioner was convicted of tax evasion on September 16, 1982. Petitioner was represented by attorney Sherman Magidson (Magidson), who specializes in the defense of persons charged with Federal criminal offenses. In connection with that criminal case, petitioner signed, under oath, a motion filed in the United States District Court, attesting that he moved his domicile and residence to Puerto Rico in approximately August of *404 1976. The motion was filed to attack count two of the indictment, for the taxable year 1976, by showing lack of venue in the Northern District of Illinois. Magidson, who drafted the motion, testified that he used the "August of 1976" time period in the motion because he understood that to be the time most easily provable that petitioner, Josephine, and their two children actually picked up and moved physically to Puerto Rico. At petitioner's sentencing hearing, Magidson again stated in the District Court that petitioner and his family moved to San Lorenzo, Puerto Rico, in August or September of 1976. Although a plea of nolo contendere to criminal tax evasion does not estop petitioner from challenging the civil fraud penalties alleged in this case, that type of conviction is admissible evidence for impeachment purposes. Hicks Co. v. Commissioner, 56 T.C. 982, 1027 (1971), affd. 470 F.2d 87 (1st Cir. 1972). However, we do not give great weight to statements made by petitioner's attorney in a different proceeding. Although petitioner did attest to his attorney's assertions in the motion, those statements were made in a *405 wholly different context, with no thought to the statements' impact upon a determination of bona fide residence in Puerto Rico for purposes of section 933. Magidson testified that he made no distinctions in his own mind between domicile and residence and was addressing a venue question. Magidson also testified before this Court that he was aware that petitioner was in Puerto Rico prior to August of 1976, but was looking for a provable date for venue purposes. This evidence does not sway us from our conclusion that petitioner was a resident of Puerto Rico for the full taxable year 1976. Therefore, we hold that petitioner was a bona fide resident of Puerto Rico for the full taxable year 1976 and is entitled to the applicable exclusions of section 933 for that year. III. Petitioner's Taxable Income for 1975 and 1976
Petitioner did not file United States Individual Income Tax Returns (Forms 1040) for the taxable years 1975 and 1976. [6] Petitioner also did not file individual income tax returns with the Department of Treasury, Bureau of Income Tax, in the Commonwealth of Puerto Rico for taxable years 1975 and 1976. Petitioner contends that the only amounts of income he received *406 in 1975 and 1976 were winnings from gambling in Puerto Rico. Petitioner alleges that he believed that he was a resident of Puerto Rico for 1975 and 1976 and that he did not need to report his gambling winnings and file tax returns in the United States. He also contends that he thought that gambling proceeds did not need to be reported in Puerto Rico. There is no probative evidence in the record as to any source of taxable income other than gambling winnings in Puerto Rico. [7] However, any sources of nontaxable income such as gifts, inheritances, or loans have been negated. *407 Petitioner maintained no business or financial records for the taxable years at issue. Thus, respondent determined unreported income and deficiencies in petitioner's income tax for the taxable years 1975 and 1976 through the cash expenditures method, which method includes the analysis of bank deposits. The parties have stipulated or conceded, and we so find, that petitioner and/or Josephine made the following expenditures during the taxable years 1975 and 1976: 1975
Date
Item
Amount 03/25/75
Cash payment to Rich Grady,
State Farm Insurance Companies
$ 225.67    08/01/75
Cash purchase of automobile
7,180.35
(1975 Buick Electra) Cash purchase of house in
Barrio Quebrada, San Lorenzo,
Puerto Rico
08/25/75
Down payment 28,000.00
11/15/75
Balance 42,000.00
Cash purchase of house in
Santa Isabel, Puerto Rico
08/14/75
Down payment 1,000.00
08/27/75
Balance 27,450.00
Attorneys' Fees
1975
paid to Gilberto Cuevas in connection with purchase of Barrio Quebrada house 350.00
08/27/75
paid to Manuel Moreda in connection with purchase of Santa Isabel house 285.00
Monthly loan payments to
Pioneer Bank
1,384.56
Cash deposits
09/13/75
Account #42-790294 (petitioner's
account)
1,700.00
TOTAL  $ 109,575.58
*408 1976
Date
Item
Amount Cash purchases of automobiles
08/01/76
(1976 Buick Skylark) $ 5,328.55  09/20/76
(1973 Monte Carlo) 2,000.00
Payment to Puerto Rico Commonwealth
on import of 1975 Buick Electra:
08/30/76
Excise tax 5,041.49
Insurance 35.00
06/15/76
Purchase of money orders
1,100.00
10/21/76
Purchase of money orders
1,000.00
Jan. - Aug.
Monthly loan payments to
1976 Pioneer Bank
923.04
08/09/76
Payment to Pan American Express
for shipment of belongings
1,305.00
1976
Attorney's Fees to Gilberto Cuevas
512.50
Cash deposits in Puerto Rico Bank
04/23/76
Account #42-790294 (petitioner's account) 15,000.00
11/26/76
Account #42-790294 (petitioner's account) 25,000.00
08/23/76
Account #442-80819-7 (Josephine's account) 15,000.00
12/14/76
Account #442-20905-8 (Child's account) 10,000.00
12/15/76
Account #442-20908-5 (Child's account) 10,000.00
12/17/76
Account #442-20909-4 (Child's account) 10,000.00
TOTAL
$ 102,245.58
Respondent also determined that petitioner is entitled to a standard deduction and to seven exemptions (self, spouse, and five children) for each of the taxable years 1975 and 1976. Sec. 63(c); sec. *409 151(d). Respondent's determinations are presumed correct, and petitioner bears the burden of proving that such determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 6001 requires that all taxpayers maintain sufficient records to determine their correct tax liability. In the absence of such records, respondent may compute the taxpayer's income using any reasonable method that clearly reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132 (1954). The use of the cash expenditures method of proof to reconstruct income is well accepted. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Further, bank deposits are recognized as prima facie evidence of the receipt of income. Parks v. Commissioner, supra (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)). Petitioner does not contest respondent's use of the cash expenditures method but contends that respondent has erred in the calculations. *410 First, petitioner contends that respondent erroneously has attributed to petitioner all of the loan payments made to Pioneer Bank in 1975 and 1976 in calculating petitioner's unreported income. Petitioner contends that his in-laws made some of those payments, from their own funds, while they were living in petitioner's house in Chicago, Illinois, during 1976. On brief, respondent agrees that Josephine's parents made the loan payments to Pioneer Bank after Josephine, David, and Hector moved to Puerto Rico in August of 1976. Therefore, the loan payments made by petitioner's in-laws for the months of September through December of 1976, totaling $ 461.52, are not includable in the calculation of petitioner's income for 1976. The remaining loan payments of $ 1,384.56 in 1975 and $ 923.04 in 1976 were made by petitioner or Josephine and are includable in petitioner's income for the taxable years at issue. These adjustments are reflected in the chart above. Petitioner also contends that, to the extent that respondent included $ 10,116, purportedly received from the State of Illinois as income, respondent's calculations are erroneous. However, that $ 10,116 was not included in petitioner's *411 income. Respondent merely referred to that amount in her analysis and used the stipulated amount of $ 3,372.02 of gross income received by petitioner as salary from the State of Illinois in 1974 as a factor in her expenditures analysis in an effort to negate nontaxable sources of income and determine petitioner's net worth as of January 1, 1975. Therefore, no adjustment needs to be made. IV. Election of Joint Filing Status under Section 6013(a)
Petitioner further contends that he is entitled to joint filing status. Respondent applied the income tax rates for married filing separately in calculating petitioner's tax deficiencies. Petitioner argues that this Court has held that an individual may make a joint status election even if no returns have been filed and even after respondent has issued a statutory notice of deficiency. Phillips v. Commissioner, 86 T.C. 433 (1986), affd. on this issue 851 F.2d 1492 (D.C. Cir. 1988); Rev. Rul. 83-183, 1983-2 C.B. 220. For many years, this Court followed the rationale of Durovic v. Commissioner, 54 T.C. 1364 (1970), *412 affd. on filing status issue, revd. in part 487 F.2d 36, 41-42 (7th Cir. 1973). In Durovic, we held that a taxpayer who has not yet filed a return is precluded from electing a filing status other than the one determined by respondent in the notice of deficiency. Subsequently, respondent issued a revenue ruling that permitted taxpayers, who had failed to file tax returns, to file joint tax returns despite the running of the 3-year period of section 6013(b)(2)(B). [8]Rev. Rul. 72-539, 1972-2 C.B. 634, 635. See Rev. Rul. 83-183, 1983-2 C.B. 220. As noted in Revenue Ruling 83-183, Revenue Ruling 72-539 holds that "taxpayers who have filed no returns may elect to file a joint return after the expiration of the 3 year period in section 6013(b)(2)(B)". Id. at 221. (Emphasis in original.) *413 Upon consideration of respondent's published positions, the legislative history of section 6013, and a plain reading of the statute, this Court declined to continue to follow Durovic. Phillips v. Commissioner, 86 T.C. 433, 441 (1986). [9] Furthermore, we have recognized that the Durovic approach indiscriminately penalizes all taxpayers who fail to file returns -- while such an approach might be appropriate in situations where a taxpayer willfully fails to meet his or her filing responsibilities, it unjustly and unfairly punishes a taxpayer whose failure to file was unintentional and/or justifiable. Millsap v. Commissioner, 91 T.C. 926, 936 (1988). *414 Petitioner has not filed any tax returns for the taxable years at issue. However, he has consistently taken the position in this case that he is not required to file United States tax returns for 1975 and 1976 because he was a resident of Puerto Rico during those years and the only amounts of income he received in 1975 and 1976 were proceeds from gambling in Puerto Rico. Petitioner has put at issue the full amount of respondent's determination of deficiencies and additions in this case, and has properly petitioned this Court to redetermine the same. That necessarily includes petitioner's filing status as well as items of income or exemptions. Cf. Millsap v. Commissioner, 91 T.C. at 934, 936. We have held herein that petitioner was not a bona fide resident of Puerto Rico during the entire taxable year 1975 and hence was required to file a United States income tax return for 1975. There is no dispute that petitioner was married to Josephine during that taxable year, and no facts have been presented that would render petitioner ineligible for joint filing status. The general rule is that married taxpayers are entitled to elect joint filing status. *415 Sec. 6013(a). It is only after they have filed a return electing separate status that limitations arise under section 6013(b)(2)(B) or (C) as to their right to change that election to a joint filing status. Millsay v. Commissioner, supra; Phillips v. Commissioner, supra.
In Millsap v. Commissioner, 91 T.C. at 937, we held that: in situations where deficiency procedures are availed of and a taxpayer has not filed a return, the taxpayer may file a return and contest respondent's filing status determination, even though respondent has "filed" a substitute return under section 6020(b), in which filing status has been "elected" by respondent. To hold otherwise would be to cede jurisdiction as to the determination of filing status in all cases where no return has been filed to respondent for * * * [her] absolute and final determination. * * * As respondent points out, tax returns were filed in Millsap before the case was submitted to this Court for decision. No tax returns have been filed in this case. Respondent relies upon our footnote 7 in Phillips v. Commissioner, 86 T.C. 433, 441 n. 7 (1986) *416 where we suggested that if no returns were in the record by the time the case was submitted to the Court for decision "no joint filing status could be claimed". However, neither in Phillips nor in the cases cited in footnote 7 was there any claim, as here, that the taxpayer did not have to file any tax return in the United States. It was only after the Court rejected that principal argument that petitioner had any need or opportunity to elect joint filing status under section 6013(a). [10] None of the limitations of section 6013(b) are implicated here. See supra note 8. *417 Accordingly, we hold that petitioner is entitled to elect joint filing status for 1975, provided Josephine consents thereto. [11]
*418 V. Fraud Addition
Fraud is a question of fact to be determined on the basis of the entire record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962). Respondent bears the burden of proving each element of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent must prove by clear and convincing evidence that petitioner underpaid his income taxes and that some part of that underpayment is attributable to fraud. Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Furthermore, respondent must establish fraud for each taxable year at issue. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969). Respondent establishes the presence of fraud by proving that the taxpayer specifically intended to evade a tax believed to be owing. Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Respondent must show that the taxpayer *419 intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of tax. Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Gajewski v. Commissioner, 67 T.C. 181 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Respondent may use circumstantial evidence to prove fraud, since direct proof of a taxpayer's intent is rarely available. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States, 317 U.S. 492 (1943). However, a mere showing that a taxpayer failed to report gambling income or that income was derived from illegal activities does not constitute clear and convincing evidence of fraud. Devany v. Commissioner, T.C. Memo. 1959-8. *420 Furthermore, respondent may not rely on the presumption of correctness of the determined deficiencies for the purpose of sustaining the imposition of fraud penalties. Wheeler v. Commissioner, T.C. Memo. 1978-15. The mere existence of deficiencies, even if substantial and consistent over a period of time, does not establish fraud per se. Such deficiencies may arouse suspicion of fraud, but, without more, a strong suspicion does not meet respondent's burden of proof. Toledano v. Commissioner, 362 F.2d 243 (5th Cir. 1966), affg. in part, revg. in part T.C. Memo. 1963-200. Even if petitioner concedes that all or most of the deficiencies are correct, without more, respondent's burden of proving fraud by clear and convincing evidence is not satisfied. Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Wheeler v. Commissioner, supra."The essential element which respondent must prove affirmatively is that * * * [petitioner] intended to defraud the government by calculated *421 tax evasions, i.e., that his conduct had as its specific purpose the evasion of a tax known or believed to be owing." Wheeler v. Commissioner, T.C. Memo. 1978-15, 37 T.C.M. 51, 99, 47 P-H Memo T.C. par. 78,015 at 104 (1978); Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939). Petitioner testified that he did not file tax returns in the United States in 1975 and 1976 because he thought he was a resident of Puerto Rico. He further testified that he did not move to Puerto Rico to evade paying income taxes in the United States. Petitioner also testified that he did not file returns or report his gambling income in Puerto Rico because he did not think he had such a duty. Respondent cannot merely contend that petitioner's explanation of the unreported items is inadequate. Negligence, no matter how great, is not the equivalent of fraud. Wheeler v. Commissioner, supra.Respondent must affirmatively disprove the excuse with evidence so convincing as to demonstrate clearly *422 that petitioner intended to defraud the Government of taxes known to be owing. Mitchell v. Commissioner, supra.Respondent has not done so in this case. Respondent offered the testimony of Joseph A. DeLeon (DeLeon), an Internal Revenue Service agent who participated in the investigation of the criminal charges against petitioner. DeLeon testified that he recommended that petitioner be prosecuted for evading his income taxes for the years 1975 and 1976. [12] He stated that he reached this conclusion "because items which we consider to be badges of fraud were present in the investigation": extensive use of cash by petitioner and failure to file tax returns for years in which a substantial tax was due and owing. When questioned on cross-examination whether he did anything other than look at the documents submitted by respondent to determine where petitioner was living in 1975 and 1976, DeLeon stated that he did not feel that he needed to do anything further with relation to the documents. However, DeLeon also stated that he interviewed various witnesses, who indicated that petitioner was frequently traveling back and forth between Chicago and Puerto *423 Rico. This testimony, without further supporting evidence, does not establish the requisite intent. The mere failure to file tax returns does not establish fraud per se. Kotmair v. Commissioner, 86 T.C. 1253 (1986). Furthermore, petitioner may have conducted all of his financial transactions in cash, but there is no indication that he tried to hide or conceal any of these activities. His property purchases *424 and banking activities were appropriately documented. Respondent has not shown any intent by petitioner to deceive or evade detection. Consequently, respondent has failed to meet her burden of proof by clear and convincing evidence. VI. Addition for Failure to Pay Estimated Tax
Respondent has determined that petitioner is liable for the addition to tax under section 6654 for failure to pay estimated tax. Such addition to tax is mandatory absent a showing by petitioner that one of the statutorily provided exceptions applies. Recklitis v. Commissioner, 91 T.C. 874, 913 (1988). Petitioner has failed to show that any of the exceptions contained in section 6654 apply. Therefore, respondent's determination is sustained. To reflect the concessions and the foregoing holdings, Decision will be entered under Rule 155. Footnotes
1. Attorney's Barbara J. Stuetzer and Marcia Topper Wolf↩ ably represented petitioner throughout pretrial proceedings, trial of the case, and filing of post-trial briefs. Before filing of petitioner's reply brief, they moved to withdraw from the case, citing petitioner's failure to cooperate in preparation of said brief and his failure to pay attorneys' fees. Respondent's reply brief having already been received by the Court and petitioner's counsel already being thoroughly familiar with the case, the Court declined to permit them to withdraw at that stage. Upon filing petitioner's reply brief, they again moved to withdraw from the case, and the Court granted their motion. The Court regrets that these attorneys may not have been paid for their services. The laborer is worthy of her hire, and these attorneys have rendered exceptional services to an apparently ungrateful client.
2. During the years before the Court, sec. 933(1) read as follows: SEC. 933. INCOME FROM SOURCES WITHIN PUERTO RICO. The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Resident of Puerto Rico for Entire Taxable Year↩. -- In the case of an individual who is a bona fide resident of Puerto Rico during the entire taxable year, income derived from sources within Puerto Rico (except amounts received for services performed as an employee of the United States or any agency thereof); but such individual shall not be allowed as a deduction from his gross income any deductions (other than the deduction under section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this paragraph.
3. Although these cases involve the issue of whether a United States citizen was a bona fide resident of a foreign country, we noted in Dawson v. Commissioner, 59 T.C. 264, 268 (1972), that the principles to be applied in determining whether a United States citizen is a bona fide resident of a foreign country are the same as those that govern whether an alien is a bona fide resident of the United States. Further, we held that an alien who lives in the United States and has no definite intention as to his stay is not a transient and is a resident for purposes of the income tax. Id.↩
4. Petitioner testified that his wife made the shipping arrangements and that he was in Puerto Rico to receive the goods on August 30, 1976. The record indicates otherwise. Petitioner, not Josephine, recalled that the moving arrangements were made at Pan-American Express, located on West Division Street in Chicago. Petitioner's signature appears on the bottom of the receipt, indicating that he made the arrangements and accepted the company's shipping terms. In addition, petitioner applied for the renewal of his Illinois driver's license in Chicago on August 31, 1976. It seems highly unlikely that petitioner could have applied for that renewal the day after he was supposedly in Puerto Rico to receive the shipped goods. We find petitioner's testimony in this regard to be self-serving and crafted to create the impression that petitioner resided in Puerto Rico throughout 1975 and 1976. We do not condone petitioner's less than candid testimony. However, we do find that, despite petitioner's unreliable testimony, there is enough additional evidence to support petitioner's Puerto Rican residency in 1976, but not in 1975.↩
5. On the other hand, other than petitioner's unreliable and wholly self-serving testimony, there is nothing in the record to establish his residency in Puerto Rico the first week of January 1975, as he claims. We simply do not believe petitioner's convenient story about the alleged Christmas gifts.↩
6. Since petitioner has never filed tax returns, there is no statute of limitations issue in this case regardless of the outcome of the fraud issue. Sec. 6501(c)(3). Petitioner is in error on that point.↩
7. The only evidence as to source or sources of taxable income is petitioner's testimony. The Court is not necessarily required to accept such testimony, but does in this instance. Moreover, on brief respondent seems to adopt petitioner's claim that all of his income was from such gambling.↩
8. Sec. 6013(b)(2)(B) provides for a 3-year period of limitation for electing to change from separate return to joint return status. Sec. 6013(b)(2)(C) provides that an election to change from separate return to joint return status cannot be made after the notice of deficiency is mailed and after a petition has been filed in the Tax Court.↩
9. In Phillips v. Commissioner, 86 T.C. 433 (1986), affd. on this issue 851 F.2d 1492↩ (D.C. Cir. 1988), the taxpayer, a United States citizen living abroad, filed untimely tax returns for 1979, 1980, and 1981, claiming joint return status with his wife who elected to be considered a United States resident for tax purposes. The taxpayer's returns were filed on October 12, 1983, after respondent had filed dummy returns on behalf of the taxpayer and after respondent, using married filing separately rates, had issued a statutory notice of deficiency on May 18, 1983. We held that respondent's dummy returns were not "returns" within the meaning of sec. 6020(b) and that taxpayer and his wife may make a joint return because the limitations of sec. 6013(b) apply only when a taxpayer has previously filed a return.
10. In none of the earlier cases did the taxpayers contend, as petitioner did here, that they were not legally required to file anyU.S. tax return. Millsap v. Commissioner, 91 T.C. 926 (1988); Phillips v. Commissioner, supra; Durovic v. Commissioner, 54 T.C. 1364 (1970), affd. on filing status issue, revd. in part and remanded 487 F.2d 36, 41-42 (7th Cir. 1973). Accordingly, because of this significant factual distinction, we think our Golsen rule does not require us to apply the earlier Durovic opinion of the Court of Appeals for the Seventh Circuit. Golsen v. Commissioner, 54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).
11. Josephine had no income in 1975. Although she is not a party to this case, that does not preclude petitioner from seeking to use joint rates. Millsap v. Commissioner, 91 T.C. at 929 n. 5. However, mindful that in Millsap joint returns were actually filed thereby evidencing the wife's consent to the joint filing status, the Court concludes that petitioner too must satisfy the Court, during the Rule 155 proceedings, that Josephine consents to joint filing status. See Gudenschwager v. Commissioner, T.C. Memo. 1989-6; Kartrude v. Commissioner, T.C. Memo. 1988-498, affd. in part, revd. in part and remanded 925 F.2d 1379 (11th Cir. 1991); compare Plumback v. Commissioner, T.C. Memo. 1993-144↩, where the case as to taxpayer-wife had already been dismissed.
12. A plea of nolo contendere by a taxpayer to a charge of criminal tax fraud and resulting conviction do not bar him from disputing the imposition of civil fraud penalties for the same taxable years. The doctrine of collateral estoppel raised by a plea of guilty to criminal tax fraud is not applicable to a plea of nolo contendere. Doherty v. American Motors Corp., 728 F.2d 334, 337 (6th Cir. 1984); Hicks Co. v. Commissioner, 56 T.C. 982, 1027 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Godfrey v. Commissioner, T.C. Memo. 1968-199↩.